THE HONORABLE FRED Van SICKLE

F. MIKE SHAFFER, WSBA No. 18669
Bradley B. Jones, WSBA No. 17197
Kenneth G. Kieffer, WSBA No. 10850
GORDON THOMAS HONEYWELL
MALANCA PETERSON & DAHEIM LLP
1201 Pacific Avenue, Suite 2100
Tacoma WA 98402
253-620-6500

STEVE W. BERMAN
CLYDE A. PLATT, JR.
HAGENS BERMAN LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101-2609
206-623-7292

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEC 20 2004

JAMES R. LARSEN, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re METROPOLITAN SECURITIES LITIGATION | No. CV-04-025-FVS |
| | CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE SECURITIES ACT OF 1933 AND WASHINGTON SECURITIES ACT |
| THIS DOCUMENT RELATES TO: | |
| ALL ACTIONS | |
| | DEMAND FOR JURY TRIAL |

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

# TABLE OF CONTENTS

I.     SUMMARY OF ACTION ........................................................... 9

II.     JURISDICTION AND VENUE ............................................... 14

III.    THE PARTIES ......................................................................... 14

IV.    CLASS ACTION ALLEGATIONS ........................................ 19

     A.     The Metropolitan Registration Statements.................................... 20

     B.     The Summit Registration Statements. ........................................... 21

V.     UNDERLYING   ALLEGATIONS   OF   NEGLIGENCE   IN
         CONNECTION WITH PLAINTIFFS' CLAIMS ..................................... 24

     A.     The Metropolitan – Summit Enterprise.......................................... 24

     B.     Metropolitan and Summit's False Accounting. ............................ 30

     C.     Metropolitan and Summit's False Pricing of Securities. .............. 34

     C.     The Nature of the GAAS and GAAP Violations. ......................... 35

            1.     Related Party Transactions...................................................... 35

            2.     Failure to Report Losses on Poorly Underwritten
                 Loans. ..................................................................................... 40

            3.     Recognizing Improper Gains on the Sale of Real
                 Estate. ..................................................................................... 43

            4.     Use of Improper Appraisals: AU 336 –Using the Work
                 of a Specialist. ....................................................................... 44

            5.     Loan Versus Investment: Notice to Practitioners –
                 ADC Arrangements................................................................. 47

            6.     Internal Control Standards. .................................................... 49

            Summary of GAAS Violations........................................................ 56

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 – FACSIMILE (253) 620-6565

Explanation of Violation........................................................................... 56

D.    Summary of GAAP Violations......................................................... 60

E.    Representative Transactions............................................................ 63

    1.    FYE 2000. ........................................................................... 63

    2.    FYE 2001. ........................................................................... 64

    3.    FYE 2002. ........................................................................... 66

F.    Effect on Financial Statements........................................................ 68

G.    Additional Misrepresentations and Omissions in the Registration Statements.................................................................. 68

H.    Roth Capital Was Negligent in its Due Diligence and its Pricing Approval of Metropolitan Group Securities..................... 92

H.    Statutory Safe Harbor Is Inapplicable To Claims Under The Securities Act.................................................................................. 95

VI.    CLAIMS FOR RELIEF ............................................................................ 95

A.    COUNT I:    By the Federal Claims Class Against Metropolitan Individual Defendants for Violations of Section 11 of the Securities Act ................................................................. 95

B.    COUNT II:    By the Federal Claims Class Against the Metropolitan Individual Defendants and Pellegrino for Violations of Section 12 of the Securities Act .............................. 98

C.    COUNT III:    By the Federal Claims Class Against the Metropolitan Individual Defendants, Turner and Skaggs for Violations of Section 15 of the Securities Act ............................ 100

D.    COUNT IV:    By the Federal Claims Class Against the Summit Individual Defendants for Violations of Section 11 of the Securities Act ................................................................. 101

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

E.   COUNT V:   By the Federal  Claims Class Against the Summit Individual Defendants and Pellegrino For Violations of Section 12 of the Securities Act ................................................ 103

F.   COUNT VI:   By the Federal Claims Class Against the Summit Individual Defendants, Sandifur and Skaggs for Violations of Section 15 of the Securities Act ............................. 105

G.   COUNT VII:  By the Federal Claims Class Against E&Y for Violations of Section 11 of the Securities Act ............................ 107

H.   COUNT  VIII:    By the Federal Claims Class Against PricewaterhouseCoopers for Violations of Section 11 of the Securities Act ........................................................................ 109

I.   COUNT IX:   By the Federal Claims Class Against Roth Capital for Violations of Section 11 of the Securities Act .......... 113

J.   COUNT X:   Against All Defendants For Violations of Washington State Securities Act ................................................ 116

VII.   ADDITIONAL FACTUAL ALLEGATIONS SOUNDING IN FRAUD ................................................................................... 118

A.   General Background. ............................................................... 118

1.   The Metropolitan Group's Disastrous Approach to Commercial Lending. ......................................................... 120

2.   The Regulators Finally Catch Up. ..................................... 123

B.   The Metropolitan Group Was a Ponzi Scheme. ........................... 127

1.   The Metropolitan Group Successfully Evades State Regulation. ........................................................................ 129

2.   State Regulators Recognize the Ponzi Scheme and Find the Metropolitan Group's Registration Statements Misleading. ........................................................................ 133

C.   Accountant Allegations. ............................................................. 143

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 • FACSIMILE (253) 620-6565

1.    The Metropolitan Group's addiction to "Rabbit" transactions.......................................................... 145

2.    Discussion of auditing standards. ...................................... 147

2.    Types of Bogus Transactions: Summary of Key GAAP and GAAS Violations. ....................................... 149

D.    Internal Controls and Control Standards Were Nearly Non-Existent, Wholly Ineffectual and Frequently Overridden........... 154

1.    The Metropolitan Group Was, in Effect, a Sole Proprietorship Riddled With Conflicts of Interest............ 154

2.    There Were Material Weaknesses in Internal Controls and Control Standards....................................... 158

a.    Financial control and accounting "was a big spider web of a mess."............................................ 161

b.    Commercial lending recordkeeping and internal controls were a shambles. ........................................ 163

c.    The material weaknesses in the Metropolitan Group's internal controls were recklessly disregarded by PWC. ............................................... 166

d.    The material weaknesses in the Metropolitan Group's internal controls were know to E&Y........ 169

E.    The Corporate Form of the Metropolitan Group Was Intentionally Abused Through the Use of Related Party Transactions For the Purpose of Cooking the Books.................. 173

Lansing-Clarion ...................................................................... 175

Tagert Lakes. ......................................................................... 176

F.    The Metropolitan Group's Use of Related Party Transactions Created Heightened Auditing Responsibilities for PWC and E&Y............................................................................... 179

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

G.  The Metropolitan Group Used Related Party Transactions to Avoid Reporting Losses on Poorly Underwritten Loans and PWC and E&Y Approved. ........................................................... 179

    1.  The Napa Partners Transaction. ......................................... 181

    2.  Mughar/Florida Hotels. ..................................................... 183

H.  The Metropolitan Group Failed to Properly Recognize Loan Losses. .................................................................................... 189

I.  Recognizing Phony Gains on the Sale of Real Estate. ................. 193

J.  Use of Bogus Appraisals: AU 336 –Using the Work of a Specialist. ............................................................................... 199

K.  Metropolitan Group's "Loan to Own" Philosophy Meant Many Transactions Were Investments, Not Loans: Notice to Practitioners – ADC Arrangements. ............................................ 206

Silver Canyon/Grand Hills. ................................................................. 210

L.  Additional Representative Sham Transactions. ........................... 212

    1.  FYE 2000 ........................................................................ 212

        a.  The Koa Transaction. ................................................ 212

        b.  Tagert Lakes. ........................................................... 219

        c.  FLIP Transaction. ..................................................... 220

    2.  FYE 2001 "Sham" Transactions. ....................................... 220

        a.  Mughar/Florida Hotels. ............................................ 220

        b.  Napa Partners. ......................................................... 221

        c.  Trillium/Jeff Properties. ............................................ 222

        d.  Malouf/Rams Hill ..................................................... 228

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

| | | | | |
|---|---|---|---|---|
| | | e. | DPAC or DAC. | 229 |
| | 3. | | FYE 2002 Representative Transactions | 231 |
| | | a. | Malouf/Rams Hill | 231 |
| | | b. | Neighborhood, Inc. | 232 |
| | | c. | Lansing-Clarion. | 233 |
| | | d. | Silver Canyon/Grand Hills. | 234 |

M.    SEC Issues. ................................................................... 247

N.    Roth Capital Intentionally Misrepresented the Value of Metropolitan Group Securities and That it Had Complied With Due Diligence Standards. ..................................................... 250

    1.    Metropolitan and Summit Securities Were Not Comparable in Quality and Risk to Investment-Grade Securities Offered By Similar Institutions. ........................ 251

    2.    Defendant Roth Capital Knew, But Failed to Disclose, That Metropolitan and Summit Did Not Have Adequate Income And Reserves to Pay its Debt Service. ............................................................................... 252

    3.    Roth Capital Knew That Metropolitan, Summit and MIS Marketed These Securities in Violation of NASD Suitability Rules, But Falsely Stated in Registration Statements and Prospectuses That These Sales Complied With Suitability Standards Listed in NASD Conduct Rules. .......................................................... 256

O.    Statutory Safe Harbor is Inapplicable to Claims Under the Securities Act That Sound in Fraud. ........................................... 259

A.    COUNT XI: Alternative Claim by the Federal Claims Class Against PricewaterhouseCoopers for Violations of Section 11 of the Securities Act Sounding in Fraud ................................. 260

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 • FACSIMILE (253) 620-6565

B. COUNT XII: Alternative Claim by the Federal Claims Class Against Ernst & Young for Violations of Section 11 of the Securities Act Sounding in Fraud.................................................. 264

C. COUNT XIII: Alternative Claim By the Federal Claims Class Against Roth Capital For Violations of Section 11 of the Securities Act Sounding in Fraud........................................... 267

VIII. PRAYER FOR RELIEF ........................................................................ 270

**JURY DEMAND** ............................................................................................ 271

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

Plaintiffs, individually and on behalf of all others similarly situated, by their undersigned attorneys, for their class action complaint, allege as follows. All allegations in this complaint are based upon the investigation of counsel and upon information and belief, except the allegations pertaining to the named plaintiffs, which are based upon personal knowledge. As of the date of this complaint, plaintiffs have received no discovery from defendants. As a result, once the discovery process is underway, additional information concerning defendants' violations of law during the Class Period may be revealed. In that event, plaintiffs will seek leave to amend this complaint to add new parties and/or new claims as appropriate.

## I.    SUMMARY OF ACTION

1.    This consolidated action is brought on behalf of plaintiffs as representatives of a proposed class of all persons who purchased investment debentures and preferred stock issued by Metropolitan Mortgage & Securities Company, Inc. ("Metropolitan") and investment certificates and preferred stock issued by Summit Securities, Inc. ("Summit") pursuant to registration statements that became or were effective during the period from February 13, 2001 through December 15, 2003 (the "Class Period") for violations of federal securities laws (the "Federal Claims Class"). This consolidated action is also brought on behalf of a proposed class of persons who purchased investment debentures and preferred stock issued by Metropolitan and investment contracts and preferred stock issued by Summit pursuant to registration statements that became or were effective during the Class Period, but which were not listed or authorized for

Consolidated and Amended Class Action Complaint - 9 of 271
(Case No. CV04-0025-FVS)
[1292079 v14.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

listing on the National Market System of the NASDAQ Market System, for violation of the Washington State Securities Act (the "State Claims Class").

2.      Metropolitan and Summit are complex, interrelated business entities under the common control of defendant Cantwell Paul Sandifur, Jr. ("Sandifur").  One of the principal activities of those entities was the issuance, marketing and sale of securities to the general public.  Through those sales, Metropolitan and Summit generated the funds that they used, in part, to acquire, hold and sell receivables – primarily of real estate loans, contracts, promissory notes, lottery prizes, and structured settlements.  Those receivables transactions and other business transactions were frequently between the group of related entities that were part of this common Metropolitan-Summit enterprise.

3.      Due to the size and nature of those related party transactions, it was critical that they be accounted for prudently and properly and that the Registration Statements filed in connection with the securities issued by Metropolitan and Summit comply with all regulations issued by the Securities and Exchange Commission ("SEC").

4.      Together with many of the other defendants named herein, Sandifur signed the registration statements covering the securities offerings amounting to hundreds of millions of dollars during the Class Period.  The accounting firms that are named in this action, PricewaterhouseCoopers, LLP ("PWC") and Ernst & Young, LLP ("E&Y"), both agreed to be named as experts in connection with those registration statements and agreed to the incorporation in those registration statement – of annual audit reports they had prepared and certified as the public accountants for both Metropolitan and Summit during the years 2000–2003.

Consolidated and Amended Class Action Complaint - 10 of 271
(Case No. CV04-0025-FVS)
[1292079 v14.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

The members of the Proposed Class purchased approximately $350 million of the securities issued by Metropolitan and Summit during the Class Period.

5.    Both    the    audited    and    unaudited    financial    statements    of Metropolitan and Summit that were incorporated in the registration statements of Metropolitan and Summit during the Class Period were false and misleading. The audited financial statements were presented by PWC and E&Y as fairly representing the financial condition of Metropolitan and Summit in accordance with professional standards and requirements of the SEC based on audits that complied with those same professional standards.    To the contrary, those financial statements were materially misstated as a result of the negligent failure to adhere to those professional standards and the negligence of the Metropolitan and Summit directors who signed the registration statements.    The unaudited statements also failed to comply with professional and regulatory auditing standards.

6.    As a result, those financial statements: (a) materially overstated revenue and earnings and/or understated losses by improperly avoiding losses and improperly recognizing gains; (b) materially overvalued assets (particularly commercial real estate backed loans and commercial real properties held by Metropolitan and Summit); and (c) materially overstated the value of assets on the companies' balance sheets.

7.    Those improper accounting treatments resulted in material misstatements of both Metropolitan's and Summit's financial condition in numerous financial statements promulgated in the registration statements during the Class Period, including but not limited to the annual reports (10-Ks) and

Consolidated and Amended Class Action Complaint - 11 of 271
(Case No. CV04-0025-FVS)
[1292079 v14.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

quarterly financial statements (10Qs) that were incorporated in those registrations statements.

8.    The Metropolitan and Summit registration statements that became effective during the Class Period also contained other untrue statements of material fact and omitted to state material facts necessary to make the statements therein not misleading separate from those in the financial statements that were presented therein.    These additional material misrepresentations and/or omissions included: misleading and inadequate descriptions of the risks associated with the use by Metropolitan and Summit of proceeds from the sale of securities to fund debt service and dividends on previously issued securities; the failure to adequately disclose Metropolitan's and Summit's absolute reliance on the issuance of new securities in order to survive; the failure to disclose that the lending and investing practices of Metropolitan and Summit were geared toward making paper profits on inordinately risky transactions; misrepresenta-tions and material omissions related to the negligent management, supervision and work of Metropolitan's and Summit's commercial real estate departments; misrepresentations and omissions related to Metropolitan's and Summit's deficient loan origination, loan underwriting, appraisal, and problem loan practices; and the failure to disclose a serious lack of effective internal auditing and control mechanisms in Metropolitan and Summit which, among other matters, made it impossible to perform a reasonable audit under applicable auditing standards or to perform due diligence in compliance with industry standards in connection with any securities offering made during the Class Period.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

9.    As a result of the foregoing, but unknown to them, Plaintiffs and the other members of the Classes were purchasing securities of interrelated companies that were sitting on a volcano of loss that would eventually explode under the scrutiny of investigations by the SEC and the National Association of Securities Dealers ("NASD").   Thus, when the demise of Metropolitan and Summit occurred, it was swift, unexpected, and devastating.

10.    On January 22, 2004 Metropolitan and Summit announced that E&Y had resigned and was withdrawing its audit reports for all of the periods that E&Y had served as the companies' independent auditors.   Investors were informed to not rely on the same financial statements that had been incorporated in the Metropolitan and Summit Registration Statements during the Class Period.

11.    On February 4, 2004, shortly after this announcement, both Metropolitan and Summit filed for Chapter 11 bankruptcy protection.   As the nature of those bankruptcies changed from reorganization to liquidation, it became increasingly clear that the securities that Plaintiffs and the Classes purchased pursuant to those registration statements were worthless.

12.    Plaintiffs and the other members of the Classes, many of whom were elderly, lost their investments in Metropolitan and Summit by the defendants' negligence.   In many cases, those losses represent their life savings such that they were and remain impoverished because of defendants' negligence in representing the business and financial condition of the Metropolitan-Summit enterprise.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

## II.    JURISDICTION AND VENUE

13.    The claims asserted herein arise under and pursuant to Sections 11, 12(2) and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l(2), and 77o.

14.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 22 of the Securities Act, 15 U.S.C. § 77v.  This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

15.    Venue is proper in this district pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v.  Many of the acts and transactions giving rise to the violations of law complained of herein occurred in the Eastern District of Washington.  In addition, Metropolitan and Summit maintained their corporate headquarters and executive offices at 601 West First Avenue, Spokane, Washington in the Eastern District of Washington.

16.    In connection with the acts and conduct complained of herein, the defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the mails, telephone communications and the facilities of interstate commerce.

## III.    THE PARTIES

17.    Plaintiffs Arthur Becker, Venus ("Vee") Hafford Webber, Eva Draughn, George Saylor, Becklyn Wilkey and Floyd Bodner purchased Metropolitan and Summit securities during the Class Period in a collective amount of over $2.4 million and have been damaged as a result thereof.

18.    Each of the plaintiffs named above has been appointed to serve as a Lead Plaintiff in this action pursuant to the Court's August 10, 2004 Order.

Consolidated and Amended Class Action Complaint - 14 of 271
(Case No. CV04-0025-FVS)
[1292079 v14.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

19.    Defendant Cantwell Paul Sandifur, Jr. ("Sandifur") at all times material hereto controlled Metropolitan and Summit, as well as one of Summit's subsidiaries, Metropolitan Investment Securities, Inc. ("MIS"), as an owner, officer and Director of Metropolitan, an owner of Summit, and an owner, officer, and Director of MIS.    Defendant Sandifur signed the registration statements for offerings of Metropolitan securities in 2001, 2002, and 2003, as well as other of Metropolitan's filings with the SEC, including its annual reports, during this period.

20.    Defendant Gary Brajcich was a Director of Metropolitan at all relevant times.    Defendant Brajcich signed the registration statements for offerings of Metropolitan securities in 2001, 2002, and 2003, as well as other of Metropolitan's filings with the SEC, including its annual reports, during this period.

21.    Defendant Harold Erfuth was a Director of Metropolitan at all relevant times.  Defendant Erfuth signed the registration statements for offerings of Metropolitan securities in 2001, 2002, and 2003, as well as other of Metropolitan's filings with the SEC, including its annual reports, during this period.

22.    Defendant Irv Marcus was a Director of Metropolitan at all relevant times.    Defendant Marcus signed the registration statements for securities of Metropolitan in 2001 and 2002, as well as other of Metropolitan's filings with the SEC, including its annual reports, during this period.

23.    Defendant Robert A. Ness acted as a Director of Metropolitan at all relevant times, and was in charge of financial operations in roles that included Controller and Chief Financial Officer during the Class Period.  Defendant Ness

Consolidated and Amended Class Action Complaint - 15 of 271
(Case No. CV04-0025-FVS)
[1292079 v14.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

signed the registration statements for securities of Metropolitan in 2002 and 2003, as well as other of Metropolitan's filings with the SEC, including its annual reports, during this period. Defendant Ness also served as an officer of Summit with accounting functions at that entity as well and signed registration statements for securities offered by Summit in 2001.

24.    Defendant Samuel Smith was a Director of Metropolitan and signed the registration statements for offerings of Metropolitan securities in 2001 and 2002.

25.    Defendant William D. Snider was a Director of Metropolitan at all relevant times. Defendant Snider signed the registration statements for offerings of Metropolitan securities in 2001, 2002, and 2003. Defendant Snider also served as Metropolitan's Chief Financial Officer in 1999, 2000, and 2001.

26.    Defendant Reuel Swanson was the secretary and a Director of Metropolitan and a secretary, treasurer, chief financial officer, and Director of MIS at all relevant times. Defendant Swanson signed the registration statements for securities of Metropolitan in 2001, 2002, and 2003, as well as other of Metropolitan's filings with the Securities and Exchange Commission, including its annual reports, during this period. Defendant Swanson supervised, directed, and managed the sale of securities through MIS to MIS customers, including plaintiffs. Defendant Sandifur supervised, managed, and directed sales activities of MIS toward MIS customers, including plaintiffs.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

27.    Defendant John Trimble was a Director of Metropolitan at all relevant times.    Defendant Trimble signed the registration statements for offerings of Metropolitan securities in 2001, 2002, and 2003.[1]

28.    Defendant Tom Turner served, at all relevant times, as Summit's President, Director and Principal Executive Officer and Principal Financial Officer.    Defendant Turner signed the registration statements for offerings of Summit securities in 2001, 2002, and 2003.

29.    Defendant Philip Sandifur was an Officer and Director of Summit at all relevant times.    He signed the registration statements for offerings of Summit securities in 2001, 2002, and 2003.

30.    Defendant Gregory Strate served as Secretary and as a Director of Summit at all relevant times. Defendant Strate signed the registration statements for offerings of Summit securities in 2001, 2002, and 2003.

31.    Defendant James Hawkins served as a Director of Summit at all relevant times.    Defendant Hawkins signed the registration statements for offerings of Summit securities in 2001, 2002, and 2003.[2]

32.    Defendant Robert K. Potter was a Director of Summit at all relevant times. Potter signed the registration statements for offerings of Summit securities in 2001, 2002 and 2003.

33.    Defendant Clayton Rudd was a Director of Summit at all relevant times. Rudd signed registration statements for offerings of Summit securities in 2002 and 2003.

---

[1] Defendants Sandifur, Brajcich, Erfuth, Marcus, Ness, Snider, Swanson, and Trimble are collectively referred to as the "Metropolitan Individual Defendants."

[2] Defendants Turner, Philip Sandifur, Strate, Hawkins, Potter and Rudd are collectively referred to as the "Summit Individual Defendants."

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

34.    Defendant Erik Skaggs was a vice president of market development for Metropolitan at all relevant times and was involved in the marketing of securities through Summit and its subsidiary MIS. At all relevant times Skaggs directed and supervised the general sales manager and the sales of securities by MIS to MIS customers, including plaintiffs.

35.    Defendant Ronald Pellegrino served as president, vice president, sales manager and supervisor for MIS at during the Class Period and was responsible for supervising the MIS investment advisors who sold the Summit and Metropolitan securities to the plaintiffs. Pelligrino's compensation was based, in part, on the volume of Metropolitan and Summit securities sold by MIS.

36.    Defendant PriceWaterhouseCoopers, LLP ("PriceWaterhouse Coopers" and "PWC") is a Delaware limited liability partnership, doing business in the State of Washington. During the Class Period, PWC was engaged as an independent auditor and accountant for Metropolitan and Summit, and resigned on June 12, 2001. PWC prepared and/or certified FYE 2000 financial statements for Metropolitan and Summit and PWC consented to be named as having prepared or certified such statements in each of the Metropolitan and Summit registration statements filed with the SEC during the period January 26, 2001 through December 15, 2003.

37.    Defendant Ernst & Young, LLP ("Ernst & Young" and "E&Y") is a Delaware limited liability partnership, doing business in the State of Washington. E&Y was engaged as an independent auditor and accountant for

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

Metropolitan and Summit on or about June 12, 2001.[3]  E&Y prepared and/or certified FYE 2001, 2002 and quarterly FYE 2003 financial statements for Metropolitan and Summit and E&Y consented to be named as having prepared or certified such statements in each of the Metropolitan and Summit registration statements filed with the SEC during the period January 18, 2002 to December 15, 2003.

38.    Defendant Roth Capital Partners, LLC ("Roth Capital") is a registered broker-dealer which was at all relevant times doing business in the State of Washington.  Roth Capital and its predecessor, Cruttendon Roth, were engaged by Metropolitan, Summit, and Western United Life Insurance Company ("WULA") to serve as the qualified independent underwriter ("QIU") to perform due diligence on Metropolitan, Summit, and WULA securities offerings.  Defendant Roth Capital consented to the use of its expertise and recommendations in the registration and offering documents for all securities registered for sale by Metropolitan and Summit in 1999, 2000, 2001, 2002, and 2003.  At all relevant times Roth Capital was required to perform due diligence and other legal responsibilities of an underwriter under the federal Securities Act of 1933 as to each securities offering for which it was the QIU.

## IV.    CLASS ACTION ALLEGATIONS

39.    This action is brought as a class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of plaintiffs as representatives of a proposed class of all persons who purchased investment debentures and preferred stock issued by Metropolitan Mortgage & Securities

---

[3]  Defendants PricewaterhouseCoopers and Ernst & Young are collectively referred to as the "Accountant Defendants."

Consolidated and Amended Class Action Complaint - 19 of 271
(Case No. CV04-0025-FVS)
[1292079 v14.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

Company, Inc. ("Metropolitan") and investment certificates and preferred stock issued by Summit Securities, Inc. ("Summit") pursuant to registration statements that became or were effective during the period from February 13, 2001 through December 15, 2003 (the "Class Period") for violations of federal securities laws (the "Federal Claims Class"). This consolidated action is also brought on behalf of a proposed class of persons who purchased investment debentures and preferred stock issued by Metropolitan and preferred stock issued by Summit pursuant to registration statements that became or were effective during the Class Period, but which were not listed or authorized for listing on the National Market System of the NASDAQ Market System, for violation of the Washington State Securities Act (the "State Claims Class"). Those registration statements include the following:

**A.    The Metropolitan Registration Statements.**

(1)    Registration Statement for Metropolitan Investment Debentures, Series III and III-A originally filed on February 21, 2001(SEC File No. 333-55984) and effective on May 11, 2001;

(2)    Registration Statement for Metropolitan Preferred Stock, Series H and G originally filed on February 21, 2001(SEC File. No. 333-55980) and effective on May 14, 2001;

(3)    Registration Statement for Metropolitan Preferred Stock, Series E-7 originally filed on November 8, 2001 (SEC File No. 333-73018) and effective on November 14, 2001, as amended by post-effective amendment dated December 20, 2001;

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

(4)    Registration Statement for Metropolitan Investment Debentures, Series III and III-A originally filed on April 8, 2002 (SEC File No. 333-85858) and effective on April 29, 2002; and

(5)    Registration Statement for Metropolitan Preferred Stock, Series E-7 originally filed on July 18, 2002 (SEC File No. 333-96657) and effective on August 13, 2002.

**B.    The Summit Registration Statements.**

(1)    Registration Statement for Summit Investment Certificates, Series B originally filed on January 26, 2001(SEC File No. 333-54458) and effective on February 13, 2001;

(2)    Registration Statement for Summit Preferred Stock, Series R & T, originally filed on January 26, 2001 (SEC File No. 333-54434) and effective on February 13, 2001;

(3)    Registration Statement for Summit Investment Certificates, Series B and B-1 originally filed on January 18, 2002 (SEC File No. 333-77058) and effective on February 13, 2002; and

(4)    Registration Statement for Summit Preferred Stock, Series S-3 originally filed on January 18, 2002 (SEC File No. 333-77044) and effective on February 13, 2002.[4]

40.    Excluded from the Classes are defendants herein, members of the immediate families of the defendants, any entity in which any of the defendants has a controlling interest, and the legal representatives, heirs, successors or assigns of any of the defendants.

---

[4] These registration statements are collectively referred to as the "Registration Statements."

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

41.    This action is properly maintainable as a class action for the following reasons:

(a)    The Classes are so numerous that joinder of all members is impracticable. On information and belief, there are over 10,000 members of the Classes located throughout the United States;

(b)    There are common questions of law and fact involved herein which predominate over any questions affecting only individual members of the Classes. These common questions of law and fact include:

(i)    Whether the registration statements and prospectuses for the issuance of Metropolitan and Summit securities during the Class Period, upon their effective dates, contained untrue statements of material fact;

(ii)    Whether the registration statements and prospectuses for the issuance of Metropolitan and Summit securities during the Class Period, upon their effective dates, omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(iii)    Whether defendants reasonably investigated the veracity of the statements made in the registration statements and prospectuses for the issuance of Metropolitan and Summit securities during the Class Period, and had reasonable grounds to believe and did believe the veracity of the statements in those registration statements when they became effective;

(iv)    Whether the 1933 Securities Act was violated by defendants' acts as alleged herein;

(v)    Whether the Washington State Securities Act was violated by defendants' acts alleged herein; and

Consolidated and Amended Class Action Complaint - 22 of 271
(Case No. CV04-0025-FVS)
[1292079 v14.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

(vi)    The extent of damage sustained by members of the Classes and the appropriate measure of damages.

(c)    Plaintiffs' claims are typical of the claims of the other members of the Classes.  The damages suffered by plaintiffs and all other members of the Classes arise from and were caused by the same violations of law.  Plaintiffs do not have interests antagonistic to, or in conflict with, the Classes;

(d)    Plaintiffs will fairly and adequately protect the interests of the members of the Classes and have retained competent counsel experienced in class and securities litigation to vigorously prosecute this action;

(e)    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  Furthermore, since the damages suffered by individual members of the Classes may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Class to seek redress individually for the wrongs they have suffered.

(f)    Notice can be provided to members of the Classes via a combination of published notice and first class mail using techniques and forms of notice similar to those customarily used in class actions arising under the federal securities laws.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

## V.    UNDERLYING ALLEGATIONS OF NEGLIGENCE IN CONNECTION WITH PLAINTIFFS' CLAIMS

### A.    The Metropolitan – Summit Enterprise.

42.    Metropolitan Mortgage & Securities Co., Inc. ("Metropolitan") was founded in 1953 by C. Paul Sandifur, Sr. and his brother.  Initially Metropolitan focused on buying high-risk home mortgages.  It also acquired other contracts collateralized by real estate, structured settlements, lottery prizes, and other receivables.

43.    Throughout the Class Period, Metropolitan's controlling shareholder was defendant Sandifur, who controlled Metropolitan through his direct ownership of approximately 74% of Metropolitan common stock and through his voting power in a family trust in which he is a beneficiary and holds the power to vote the shares.

44.    Western United Life Assurance Company ("WULA") was incorporated in the State of Washington in 1963 and is Metropolitan's largest subsidiary.  As a result of a stock purchase transaction in 1972 it became a subsidiary of Metropolitan.  WULA's primary business activity is investing in receivables and other investments.  WULA is principally funded by annuity contract sales, premiums from the sale of life insurance policies, and infusions of cash from Metropolitan.  By the end of 2003, WULA's asset base had grown to a reported $1.7 billion in value.

45.    Metropolitan Investment Securities, Inc. ("MIS") was incorporated in the State of Washington in 1979 as a wholly owned subsidiary of Metropolitan.  MIS was a broker-dealer and member of the NASD.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

46.    Because of WULA's success, Metropolitan formed a similar insurance company, Old Standard Life Insurance Company ("Old Standard"), which was incorporated in Idaho in 1988.

47.    During the 1980's and early 1990's, Metropolitan's business became increasingly diverse and complex, but without any long term business strategy.  As a result, Metropolitan haphazardly expanded into the insurance business, real estate brokerage, commercial property development, venture capital, and other diverse activities.

48.    For example, in addition to WULA, Metropolitan subsidiaries included Metwest Mortgage Services, Inc., which primarily performed loan collection and servicing functions for companies that Sandifur controlled, and Consumers Group Holding Company, Inc., which in turn owned Consumers Insurance Company, an inactive property and casualty insurer.

49.    Then in 1990, defendant Metropolitan created Summit Securities, Inc., an Idaho corporation ("Summit," now also in bankruptcy) as a wholly owned subsidiary.  Later, Sandifur created and wholly owned National Summit Corporation, a Washington corporation ("National").  On September 9, 1994 National acquired Summit from Metropolitan.  National owns 100% of Summit. By this action Sandifur created a near mirror image of Metropolitan – a second corporation and corporate structure that could in turn acquire other corporations which would have the ability to engage in a variety of intercompany transactions.

50.    In January of 1995, Summit acquired MIS from Metropolitan.  MIS was the exclusive Seller for the public securities offerings of Metropolitan and Summit throughout the Class Period.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

51.    In 1995, Summit created a wholly owned subsidiary holding company, Summit Group Holding Company.  On May 31, 1995, Summit Group Holding Company acquired Old Standard from Metropolitan.  Old Standard then acquired Arizona Life Insurance Company, which subsequently changed its name to Old West Annuity & Life Company ("Old West").

52.    Summit also owns Summit Property Development, Inc., a real estate development services company that works principally for Metropolitan and affiliated companies.

53.    Together, the foregoing business entities were a tangled web of affiliated (i.e. related party) mortgage lending and insurance enterprises with a brokerage arm that comprised two formal consolidated groups, but with both 100% owned and controlled solely by defendant Sandifur or his interests (collectively "the Metropolitan Group"). These two conglomerates, one with Metropolitan as the parent company, and the other headed by National Summit Corp. (Summit's parent), are reflected in the following chart:

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565



54.    From the mid-1980s to the mid-1990s, Metropolitan experienced rapid growth, funded predominantly by increasing sales of debentures and preferred stock. Assets grew to over $1 billion on a consolidated basis and the

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

total amount of outstanding debentures and preferred stock grew to $250 million. Earnings however, failed to keep pace with overall corporate growth. As a result, Metropolitan became very thinly capitalized. This problem was exacerbated by Metropolitan's practice of paying out excessive portions of available earnings to its small number of common shareholders.

55.    From the mid-1990s until 2001, the principal business activities of the Metropolitan family of companies differed somewhat from the Summit family of companies. On the Metropolitan side, the principal activity was residential mortgage loan origination, packaging and securitization of residential loans and acquiring, holding, and selling a variety of receivables, including real estate-backed contracts, structured settlements, and lottery prizes. The principal business activity of the Summit group involved commercial lending and property development. Summit started doing small commercial loans of under $1 million in approximately 1995. Loan limits increased over time to $5 million, $10 million, and eventually $15 million.

56.    In the late 1990s, Metropolitan began experiencing considerable difficulty with its line of business. As a result, in 2000 Metropolitan decided effectively to abandon its business model and to adopt Summit's business model of commercial lending and investing.

57.    Metropolitan's FYE 2001 annual report, published in May 2002, describes this period of Metropolitan's history as follows:

> In 1996, Metropolitan Mortgage & Securities set its sights on the stock market and began proffering smartly bundled, "securitized" financial deals. This strategic move transformed the company into a profit machine with over 700 employees. The profitability of securitized financial transactions began changing in late 1998 and 1999 with the global debt crisis led by

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

the defaults on Russian debt. In 1999-2000, Metropolitan Mortgage adapted its securitization deals to the changing market, but the attractiveness of such transactions never returned. At that point, Metropolitan focused on changes that would have the most impact in the shortest period of time. By slimming down to half its workforce and announcing, in January 2001, the non-securitization of its financial dealings, Metropolitan stabilized its holdings and insured the continued confidence of investors . . . .

After four years of posting record net income figures, Metropolitan began suffering losses in the year 2000 when the residential-mortgage lending market began to weaken. Securitization profit margins dried up as investors sought higher yields. Rather than attempting to increase volume in order to bolster gains, Metropolitan chose to redirect its resources toward more profitable lines of businesses. Building on a core competency of real estate, new strategies focused on commercial lending, property development, real estate contract buying and alternative cash flows.

Today Metropolitan is placing much of its redirected emphasis into commercial real estate lending with a goal to exceed volume of $500 million in this year. The key component of that effort is to make nonconforming bridge loans to property owners and developers. Metropolitan occupies a specialized niche in the commercial lending industry because of its abilities to meet rapid turnaround needs and to make equity investments in projects it finds attractive. Increasing its sales force – a team comprised of experienced, confident real estate experts – has already proven to be productive during a time when more brokers than ever are looking for less regulated avenues of lending. This is translated into more deals, more contacts, with higher profits, in increasingly national markets.

58.    In or around January, 2000, Metropolitan's debentures were approved for listing on the Pacific Stock Exchange. In or around January, 2002,

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

Metropolitan's Series E-7 preferred stock was approved for listing on the same exchange. Summit preferred shares were not listed or authorized for listing on a national securities exchange prior to 2002 and were not "covered securities" under 15 U.S.C. § 77r(b)(1). Summit's investment certificates were not listed or authorized for listing on a national exchange and were not "covered securities" under 15 U.S.C. § 77r(b)(1).

59.    In April 2004 the United States Bankruptcy Court for the Eastern District of Washington appointed an examiner ("Examiner") for the purpose of investigating the demise of the Metropolitan Group. In June 2004 the Examiner published an Interim Report. Commenting on the conglomeration of business interests in the Metropolitan Group, the Examiner's Interim Report observed:

> There is overwhelming evidence that from a management, economic, and legal standpoint, Metropolitan and Summit [Securities, Inc.] were largely organized and run as one, consolidated entity and that transactions by and between the two companies, and their respective subsidiaries, have few, if any valid hallmarks of arm's-length or market priced transactions.

## B.    Metropolitan and Summit's False Accounting.

60.    Throughout the Class Period, Metropolitan and Summit and their related entities engaged in real estate and lending transactions among themselves. The accounting for those transactions in Metropolitan's and Summit's financial statements resulted in each of those entities avoiding material losses on poorly underwritten loans, recognizing material amounts of income on sales of real estate, and recognizing material amounts of interest income and loan fee income. Often, these transactions were based on faulty appraisals that were used to justify gains or to eliminate losses. Yet the

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

accounting for many of those transactions unreasonably failed to comply with explicit accounting and auditing standards.

61.    Metropolitan and its various subsidiaries prepared consolidated, audited, and unaudited financial statements for financial and regulatory purposes.  Those financial statements are included in the SEC filings, including registration statements and prospectuses for the issuance of Metropolitan investment debentures and preferred stock.

62.    Summit and its various subsidiaries also prepared consolidated, audited, and unaudited financial statements for financial and regulatory purposes.  Those financial statements are included in the SEC filings, including registration statements and prospectuses for the issuance of Summit investment certificates and preferred stock.

63.    Generally Accepted Accounting Principles ("GAAP") encompass the rules, conventions and practices recognized and employed by the accounting profession for the preparation of financial statements.  Statements of Financial Accounting Standards ("FAS") are promulgated by the profession's Financial Accounting Standards Board, and are considered the highest authority of GAAP. Other authoritative pronouncements include Accounting Principles Board Opinions ("APB") and Statements of Position of the American Institute of Certified Public Accountants ("SOP").    Financial statements filed in any documents with the SEC are required by Regulation S-X (17 CFR § 210.4-01(a)(1)) to conform to GAAP.

64.    The manner in which accounting firms such as PWC and E&Y determine whether a company's financial statements comply with GAAP is through the mechanism of an audit that is conducted in accordance with

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

Generally Accepted Auditing Standards ("GAAS").    Those standards also require the auditor to state whether, in the auditor's opinion, the financial statements are presented in conformity with GAAP and to identify those circumstances in which such principles have not been consistently observed in the preparation of the financial statements of the current period in relation to those of the preceding period.

65.    Defendant PWC certified that Metropolitan's and Summit's financial statements for fiscal year 2000 (October 1, 1999-September 30, 2000) were prepared in accordance with GAAP and that its audits of each of those financial statements had been performed in accordance with GAAS as follows:

> [The accompanying financial statements of Metropolitan and Summit] present fairly, in all material respects the financial position of [Metropolitan and Summit and their respective subsidiaries] in conformity with accounting principles generally accepted in the United States of America. . . . We conducted our audits of these statements in accordance with auditing standards generally accepted in the United States of America, which require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement . . . We believe that our audits provide a reasonable basis for our opinion.

Those statements were untrue.

66.    Defendant E&Y certified that Metropolitan's and Summit's financial statements for fiscal years 2001 and 2002 were prepared in accordance with GAAP and that its audits of each of those financial statements had been performed in accordance with GAAS. Thus, in those unqualified audit reports, E&Y certified (i) that it had audited the financial statements of Metropolitan and Summit in accordance with GAAS; (ii) that it had planned and performed those

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

audits "to obtain reasonable assurance about whether the financial statements are free of material misstatement;" (iii) that, in its opinion, the financial statements of Metropolitan and Summit "present fairly, in all material respects, the consolidated financial position" of Metropolitan and Summit and their respective subsidiaries "in conformity with [GAAP];" and (iv) that its audits provided a "reasonable basis" for its opinions. Those statements were also untrue.

67.    A company's management is responsible for preparing financial statements that conform with GAAP. The AICPA Professional Standards provide:

> The financial statements are management's responsibility. . . . Management is responsible for adopting sound accounting policies and for establishing and maintaining internal control that will, among other things, record, process, summarize, and report transactions (as well as events and conditions) consistent with management's assertions embodied in the financial statements. The entity's transactions and the related assets, liabilities, and equity are within the direct knowledge and control of management . . . Thus, the fair presentation of financial statements in conformity with generally accepted accounting principles is an implicit and integral part of management's responsibility.

AU § 110.93 (1998).

68.    In connection with the audits of Metropolitan's and Summit's 2000, 2001, and 2002 financial statements, management of Metropolitan and Summit made written representations to the Accountant Defendants in which they acknowledged their responsibility for the fair presentation of the financial condition, results of operations, and cash flows of those companies in their

Consolidated and Amended Class Action Complaint - 33 of 271
(Case No. CV04-0025-FVS)
[1292079 v14.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 • FACSIMILE (253) 620-6565

financial statements in conformity with GAAP. Similar management representations were provided by Metropolitan's and Summit's management for each of the Accountant Defendant's reviews of the interim financial statements of each company during 2001–2003.

## C.    Metropolitan and Summit's False Pricing of Securities.

69.    Qualified independent underwriter Roth Capital was engaged to perform financial analysis of Metropolitan and Summit, and to exercise due diligence to examine and provide expert advice to the investing public. Roth Capital had a duty to prospective investors to conduct an investigation of Metropolitan, Summit and MIS that would support a reasonable belief that statements provided to investors were truthful and complete.

70.    Roth Capital negligently failed to obtain data needed for its engagement, and it failed to exercise due-diligence in examining false data submitted by Metropolitan, Summit, and others with regard to the securities on which they acted as a qualified independent underwriter. Roth Capital was negligent in not knowing that officers and directors for Metropolitan, MIS, and Summit were omitting material information in their communications to prospective investors. Roth Capital had no reasonable basis to represent that the price or yield of the various Metropolitan and Summit securities during the Class Period was fair.

71.    Brokers and investors relied upon Roth Capital to determine the soundness of the securities on which it acted as a qualified independent underwriter, and to determine the validity of statements in the registration statement and prospectuses in which it participated that concern the financial condition of Metropolitan and Summit. Roth Capital's misrepresentations

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

relating to its "due diligence" and its negligent opinions concerning the pricing and yields of Metropolitan and Summit securities were substantial factors in the offer and sale of securities to the plaintiffs and directly and proximately caused monetary losses and other damages to the plaintiffs.

## C.    The Nature of the GAAS and GAAP Violations.

72.    Metropolitan's and Summit's financial statements which were included in their year-end audited financial statements for fiscal years 2000, 2001, and 2002, as well as their quarterly financial statements for the first through third quarters of fiscal years 2001–2003, were not prepared in accordance with GAAP.

73.    The Metropolitan and Summit Individual Defendants, as well as PWC and E&Y, unreasonably and/or negligently disregarded GAAP standards in connection with: (a) the use of related parties to avoid loss recognition on poorly underwritten loans; (b) reporting gains on commercial real estate transactions; (c) recognizing loan fees and interest income; (d) the use of property valuations and appraisals to either support gains or not report material losses on commercial real estate and loan transactions; and (e) the testing and proper reporting of internal control weaknesses and risk factors.  PWC and E&Y unreasonably disregarded GAAS in connection with their reports certifying that Metropolitan and Summit's financial statements were audited in compliance with those standards.

### 1.    Related Party Transactions.

74.    One of the primary ways that the financial statements failed to comply with GAAS and GAAP was the negligent failure to adhere to standards relating to auditing and reporting on related party transactions.    Those

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

accounting standards include the AICPA Codifications of Statements on Auditing Standards, at AU § 334 and Statement of Financial Accounting Standards No. 57 ("FAS 57").

75.    AU § 334 prescribes procedures for the independent auditor when related party transactions are discovered during an audit engagement. This authoritative auditing pronouncement presents a detailed litany of auditing tests and procedures regarding related parties, many of which were materially breached by the Accountant Defendants.

76.    In its overview statement, AU § 334 indicates that:

> ...if the parties to the transaction are related, it cannot always be assumed that the recorded amounts properly reflect the true economic substance of the transaction. Moreover, the inspection of supporting documentation might not provide the auditor with competent evidential matter.

77.    AU § 334.03 notes circumstances which, because of their nature, may indicate related party transactions and, therefore, be subject to a higher degree of audit scrutiny. In particular, such circumstances include non arm's-length loan and real estate transactions.

78.    There were a large number of such loans and real estate transactions throughout the Class Period. For instance, the Examiner's Interim Report noted that:

> The Metropolitan Group members have historically engaged in numerous intercompany and affiliate transactions, including the sales of real property and receivables from one Metropolitan Group member to another, two-loan deal structuring whereby one affiliate provides the senior priority loan and another affiliate provides a junior lien loan, and intercompany loans advances, as well as the payment of substantial

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

dividends to Sandifur and his affiliates. Although trying to justify these as arm's-length transactions, in a number of such transactions the Metropolitan Group manipulated or sidestepped applicable requirements and guidelines, in order to be able to book large income gains, bolster the Metropolitan Group [Sandifur] entities' financial reporting and/or facilitate other suspect goals. Examiner's Interim Report, p. 10.

79.     AU §334.06 also cautions the independent auditor to be aware of the possibility that transactions with related parties may be motivated solely, or in a large measure, by such conditions as "lack of sufficient working capital or credit to continue business; an urgent desire for a continued favorable earnings record; and dependence on a single or relatively few products, customers, or transactions for the continuing success of the venture." All of these conditions were operative in the context of the Metropolitan and Summit group transactions and were negligently ignored by the Accountant Defendants during the relevant time period.

80.     AU §334.08 provides requirements and criteria through which the independent auditor must identify and report on related party transactions. Among other things, this auditing standard requires a detailed review of: (a) the extent and nature of business transacted with major borrowers and lenders for related party issues; (b) large, unusual, or non-recurring transactions or balances, paying particular attention to transactions recognized at or near the end of the reporting period; and (c) SEC and comparable data filed with other regulatory agencies for information about material transactions with related parties. Nevertheless, the Accountant Defendants negligently failed to note deficiencies and accounting obfuscations relating to each of the above requirements.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

81.    AU § 334.09 stipulates procedures for the independent auditor to apply to evaluate the purpose, nature, and extent of related party transactions and their effect on a financial statements.    According to the AICPA, such procedures "should be directed towards obtaining and evaluating sufficient competent evidential matter and should extend beyond the inquiry of management." Procedures specifically required of the independent auditor include: (a) obtaining an understanding of the business purpose of the transaction; (b) tests for reasonableness of the compilation of amounts to be disclosed, or considered for disclosure, in the financial statements; (c) examination of supporting documentation and executed copies of agreements; (d) exchange of relevant information with the independent auditors of related parties and the audit of intercompany account balances; (e) inspection to confirm and obtain satisfaction regarding the transferability and value of collateral; (f) confirmation of transaction amount and terms, including guarantees and other significant data, with the other party or parties to the transactions; and (g) inspection of evidence in possession of the other party or parties to the transaction.

82.    AU §334.12 clearly requires that, where management misrepresents the economic substance of a related party transaction:

> If such a representation is included in the financial statements and the auditor believes that the representation is unsubstantiated by management, he should express a qualified or adverse opinion because of a departure from generally accepted accounting principles, depending on materiality.

Thus, where the substance of material related party transactions are misreported by management, the independent auditor cannot provide a "clean", unqualified

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

opinion on the financial statements (as the Accountant Defendants negligently did in this case) but must offer a "qualified" or "adverse" opinion, or disengage from the audit.

83.    FAS 57 informs GAAP with respect to related party transactions by establishing requirements for identifying and disclosing related party transactions. It states that, among others, related parties consist of:

> 1) all affiliates of an enterprise, including its management and their immediate families; 2) its principal owners and their immediate families; 3) investments accounted for by the equity method; 4) beneficial employee trusts that are managed by the management of the enterprise; and 5) any party that may deal with the enterprise and who has ownership, control, or significant influence over the management or operating policies of another party to the extent that an arm's length transaction might not be achieved.

84.    FAS 57 requires disclosure for each material related party transaction and provides that the auditor must:

> [C]onsider whether he has obtained sufficient competent evidential matter to understand the relationship of the parties and, for related party transactions, the effects of the transaction on the financial statements. He should then evaluate all the information available to him concerning the related party transaction or control relationship and satisfy himself on the basis of his professional judgment that it is adequately disclosed in the financial statements.

85.    Based on the foregoing, although the Accountant Defendants were aware of the interrelated nature of the affiliated Metropolitan and Summit entities, they negligently ignored the implications of numerous material self-dealing transactions among those entities and negligently reported the financial results of these transactions incorrectly, as if they were arm's-length. Thus, the

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565