UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

IN RE METROPOLITAN SECURITIES LITIGATION

No. CV-04-25-FVS

ORDER DENYING MOTION TO CERTIFY THE STATE CLAIMS CLASS

**THIS MATTER** comes before the Court based upon the plaintiffs' motion to certify "The State Claims Class" under Federal Rule of Civil Procedure 23.

**BACKGROUND**

On January 26, 2001, Summit Securities, Inc. ("Summit") filed a registration statement with the Securities and Exchange Commission ("SEC") for Summit preferred Series R and T stock.[1] On February 21, 2001, Metropolitan Mortgage & Securities Co., Inc., ("Met") filed a registration statement with the SEC for Metropolitan preferred Series G and H stock.[2] The stock issued pursuant to those two registration statements did not trade on the National Association of Securities Dealers Automated Quotation System ("NASDAQ"). When Summit and Met

---

[1] Form S-2, Registration Number 333-54434.

[2] Form S-2, Registration Number 333-55980.

ORDER - 1

filed those registration statements, PricewaterhouseCoopers ("PwC") was providing auditing services to both companies. The plaintiffs allege PwC violated the Securities Act of Washington by making material misrepresentations in, and omitting material facts from, both registration statements. (Consolidated and Third Amended Class Action Complaint, ¶ 588, at 196.[3]) Now, the plaintiffs seek certification of "The State Claims Class." Fed.R.Civ.P. 23. The proposed class consists of the following persons:

> All persons who purchased preferred stock issued by Metropolitan and Summit pursuant to registration statements that became or were effective during the Class Period but were not listed or authorized for listing on the National Market System of the NASDAQ Market System, for violations of the Washington State Securities Act. This Class does not include any persons who acquired Summit Series R preferred stock solely as a reinvestment of dividends on Summit Series S-1, S-2, or S-3 preferred stock.

PwC objects to certification.[4]

**RULE 23(a)**

On paper, Met and Summit were separate companies. In PwC's opinion, their separateness means the claims asserted by Met investors and Summit investors do not raise common issues of law or fact. Fed.R.Civ.P. 23(a)(2). That being the case, says PwC, Met and Summit investors should not be combined in a single class. Instead,

---

[3] (Ct. Rec. 497.)

[4] A number of other defendants join PwC's objection to certification.

ORDER - 2

according to PwC, they should be split into separate classes.

PwC alleges there would be 65 members in a class consisting of "Series H" and "Series G" purchasers. PwC argues that a class with 65 members is small enough that it is practical to join all 65 together in an action. Thus, as PwC sees it, the plaintiffs cannot establish that classes consisting of, respectively, the Met investors and the Summit investors are so numerous that joinder of all members is impracticable. Fed.R.Civ.P. 23(a)(1).

PwC's argument assumes Met and Summit truly were separate business organizations. Ernst & Young LLP relied upon the same assumption in opposing the plaintiffs' motion for certification of "The Federal Claims Class." The Court rejected the assumption because the plaintiffs have presented evidence indicating C. Paul Sandifur Jr. controlled both companies and operated them as though they were one business organization. The companies' alleged connectedness creates common issues of law and fact. Consequently, just as in the case of The Federal Claims Class, common issues exist and their existence precludes division of the Met and Summit investors into separate classes. When Met and Summit investors are added together, their total number satisfies the numerosity requirement of Rule 23(a)(1). *Compare Harik v. Cal. Teachers Ass'n.*, 326 F.3d 1042, 1051 (9th Cir.2003) (classes with 7, 9, and 10 members were too small) *with Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir.1982) (classes with 39, 64, and 71 members were large enough under the

ORDER - 3

circumstances), *vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).

**RULE 23(b)(3)**

The investors allege PwC violated RCW 21.20.010(2).[5] Each plaintiff must prove he relied upon a material misrepresentation or omission. *Hines v. Data Line Systems, Inc.*, 114 Wn.2d 127, 134, 787 P.2d 8 (1990); *Guarino v. Interactive Objects, Inc.*, 122 Wn. App. 95, 118-19, 86 P.3d 1175 (2004). The plaintiffs are seeking certification of a class under Rule 23(b)(3). One of the things they must show is that common questions of law or fact predominate. *Id.* If they must prove reliance investor by investor, then individual questions will predominate, which will preclude certification of a (b)(3) class. *Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir.1999), *cert. denied*, 528 U.S. 1154, 120 S.Ct. 1158, 145 L.Ed.2d 1070 (2000). In order to overcome this obstacle, the plaintiffs must demonstrate they're entitled to a class-wide presumption of reliance. *See id.* Then, and only then, will they be able to show that common questions of law or

---

[5]RCW 21.20.010 states in pertinent part:

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:
. . . .
(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]

ORDER - 4

fact predominate.

The Federal Rules of Evidence provide that, when state law supplies the rule of decision for a claim, state law also determines the effect of any presumption respecting a fact which is an element of the claim.  Fed.R.Evid. 302.  Thus, the existence of a presumption is a matter of state law.  The Supreme Court of the State of Washington has not approved a presumption of reliance in a case arising under RCW 21.20.010.  As a result, this Court must interpret state law as it believes the Washington Supreme Court would.  *See Dias v. Elique*, 436 F.3d 1125, 1129 (9th Cir.2006); *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir.2003).  In doing so, this Court may rely upon "intermediate appellate court decisions, statutes, and decisions from other jurisdictions[.]"  323 F.3d at 1222.

Useful guidance may be drawn from *Morris v. International Yogurt*, 107 Wn.2d 314, 729 P.2d 33 (1986).  That case involved Washington's Franchise Investment Protection Act, chapter 19.100 RCW.  Relying upon *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), the Washington Supreme Court ruled "that in an action alleging the omission of a material fact in violation of RCW 19.100.170(2), proof of nondisclosure of a material fact establishes a presumption of reliance which the defendant may rebut by proving that the plaintiff would still have purchased the franchise even if the material fact had been disclosed."  *Morris*, 107 Wn.2d at 330.  Although the Washington Supreme Court has not extended

ORDER - 5

Case 2:04-cv-00025-FVS    Document 664    Filed 01/06/09

the *Morris* presumption to claims arising under the state Securities Act, the Washington Court of Appeals has.  Where a plaintiff alleges the defendant failed to disclose a material fact (*i.e.*, a "nondisclosure" case), a rebuttable presumption of reliance exists. *Guarino v. Interactive Objects, Inc.*, 122 Wn. App. 95, 119, 86 P.3d 1175 (2004).  *Guarino* is not dispositive here.  In essence, the state Court of Appeals invoked the *Affiliated Ute* presumption in a nondisclosure case.  This case, unlike *Guarino*, is not principally a nondisclosure case.  Rather, as the Court explained in an earlier order, this case is one in which the plaintiffs are alleging omissions and misrepresentations in roughly equal measure.  (Order of November 5, 2007, at 69.)  The *Affiliated Ute* presumption does not apply.

The issue, then, is whether the Washington Supreme Court would adopt a rebuttable presumption of reliance in a case such as this. The state Supreme Court would begin by examining analogous federal securities law.  *See, e.g., Kinney v. Cook*, 159 Wn.2d 837, 843, 154 P.3d 206 (2007) ("federal case law gives us some useful guidance"). In order to determine which federal securities provisions are analogous to the state provisions upon which the plaintiffs are relying, the state Supreme Court would examine the origin of the relevant state-law provisions.

As explained above, the plaintiffs allege PwC violated 21.20.010(2).  "Washington's securities fraud laws are modeled after the Uniform Securities Act."  *Haberman v. Washington Pub. Power Supply*

ORDER - 6

*Sys.*, 109 Wn.2d 107, 125, 744 P.2d 1032, 750 P.2d 254 (1987).  RCW 21.20.010 is "identical" to § 101 of the Uniform Securities Act. *Ludwig v. Mutual Real Estate Investors*, 18 Wn. App. 33, 43, 567 P.2d 658 (1977), *overruled on other grounds by Kittilson v. Ford*, 93 Wn.2d 223, 608 P.2d 264, 265 (1980).  Section 101 is, in substance, SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.  *Id.* at 43-44.  The Ninth Circuit has observed that RCW 21.20.010 "closely resembles" Rule 10b-5.  *Wade v. Skipper's, Inc.*, 915 F.2d 1324, 1329 (9th Cir. 1990) (internal punctuation and citation omitted).  Given the similarity, the Washington Supreme Court would consider Rule 10b-5 jurisprudence when deciding whether, and, if so, under what circumstances, investors alleging a violation of RCW 21.20.010(2) are entitled to a class-wide presumption of reliance.[6]  It is therefore necessary to determine when a person bringing an action under § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 may rely upon a rebuttable presumption of reliance.

The Supreme Court has approved rebuttable presumptions in two circumstances.  *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. ----, ----, 128 S.Ct. 761, 769, 169 L.Ed.2d 627 (2008) (hereinafter "*Stoneridge*").  One of the two circumstances is associated with *Affiliated Ute*.  "[I]f there is an

---

[6]The plaintiffs are seeking remedies under 21.20.430(1). This provision is modeled upon § 410 of Uniform Securities Act which, in turn, is modeled upon section 12(2) of the Securities Act of 1933.  *Haberman*, 109 Wn.2d at 125.

ORDER - 7

omission of a material fact by one with a duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance." *Stoneridge*, 552 U.S. at ----, 128 S.Ct. at 769 (citing *Affiliated Ute*, 406 U.S. at 153-54, 92 S.Ct. at 1472). As explained above, the *Affiliated Ute* presumption is inapplicable here. The other circumstance in which the Supreme Court has approved a rebuttable presumption is associated with *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The second circumstance involves the fraud-on-the-market doctrine:

> [R]eliance is presumed when the statements at issue become public. The public information is reflected in the market price of the security. Then it can be assumed that an investor who buys or sells stock at the market price relies upon the statement.

*Stoneridge*, 552 U.S. at ----, 128 S.Ct. at 769 (citing *Basic*, 485 U.S. at 247, 108 S.Ct. at 991-92). However, there is a significant limitation upon the fraud-on-the-market presumption. It "is available only when a plaintiff alleges that a defendant made material representations or omissions concerning a security that is actively traded in an efficient market, thereby establishing a fraud on the market." *Binder*, 184 F.3d at 1064 (internal punctuation and citations omitted). The plaintiffs concede that neither Metropolitan preferred Series G and H stock nor Summit preferred Series R and T stock traded on an efficient market.

Despite making this concession, the plaintiffs insist they are entitled to a presumption of reliance under Washington law. They note

ORDER - 8

that while the Washington Supreme Court considers federal jurisprudence, it has adopted its own principles of statutory construction:

> The primary purpose of the [Securities Act of Washington] is to protect investors from speculative or fraudulent schemes of promoters. . . .  The Act is remedial in nature and has as its purpose broad protection of the public. . . .  When interpreting this remedial legislation, the [Washington Supreme] court is guided by the principle that remedial statutes are liberally construed to suppress the evil and advance the remedy.

*Go2Net, Inc. v. FreeYellow.com, Inc.*, 158 Wn.2d 247, 253, 143 P.3d 590 (2006) (internal punctuation and citations omitted).  In view of the preceding principles, say the plaintiffs, the state Supreme Court likely would approve a rebuttable presumption of reliance in this situation.  According to the plaintiffs, the state Supreme Court might adopt a more expansive interpretation of the fraud-on-the-market doctrine or, in the alternative, it might adopt the fraud-created-the-market doctrine as developed by the Fifth Circuit.

The plaintiffs cite *Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113 (S.D.N.Y.2001), for the proposition that the fraud-on-the-market doctrine can apply even in the absence of an efficient market.  In *Cromer*, a district judge ruled that the plaintiffs were entitled to rebuttable presumption of reliance even though the securities in question did not trade on an efficient market.  He seems to have reasoned that investors must have relied upon the accountant's audit, and therefore "fairness, judicial economy, common sense and

ORDER - 9

probability all support adoption of a rebuttable presumption that investors . . . relied in their investment decisions on the integrity of the [shares' price as confirmed by the accountant]." *Id.* at 131. It is possible, of course, that the Washington Supreme Court will adopt the rationale set forth in *Cromer*. However, it is unlikely to do so. *Cromer* represents a dramatic expansion of the fraud-on-the-market doctrine. No other federal district court or court of appeals had adopted the *Cromer* rationale prior to *Stoneridge*. In light of the Supreme Court's statements about presumptions, lower federal courts and state courts are even less likely to follow *Cromer* now.

Even if the Washington Supreme Court declines to follow *Cromer*, say the plaintiffs, it might follow the Fifth Circuit's lead. Perhaps so, but that will not help the plaintiffs. The fraud-created-the-market doctrine was enunciated in *Shores v. Sklar*, 647 F.2d 462 (5th Cir.1981) (*en banc*). As the Fifth Circuit explained not long ago, "The basis of the fraud-created-the-market theory is that the fraudster directly interfered with the market by introducing something that is not like the others: an objectively unmarketable security that has no business being there." *Regents of Univ. of Cal. v. Credit Suisse First Boston (USA)*, 482 F.3d 372, 391 (5th Cir.2007). The promoter must know the enterprise was "patently worthless." *Id.* at 391 n.5 (internal punctuation and citation omitted). The plaintiffs cannot satisfy this requirement. During the relevant time period (2001-02), the Met and Summit stock was not objectively unmarketable.

ORDER - 10

In sum, the Washington Supreme Court would not recognize a presumption of reliance in a situation such as this. To begin with, since the plaintiffs are alleging misrepresentations and omissions in roughly equal measure, the state Supreme Court would hold that *Affiliated Ute* presumption does not apply. Furthermore, since the Met and Summit stock at issue here did not trade on an efficient market, the state Supreme Court would hold that *Basic* presumption does not apply.

**PwC's STATUS AS SELLER**

The plaintiffs must prove PwC was a seller of securities within the meaning of RCW 21.20.430(1). In order to do so, they must establish that PwC's actions "were a substantial contributive factor in the sales transaction." *Haberman*, 109 Wn.2d at 131. The Washington Supreme Court has adopted a multi-factor test:

> Considerations important in determining whether a defendant's conduct is a substantial contributive factor in the sales transaction include: (1) the number of other factors which contribute to the sale and the extent of the effect which they have in producing it; (2) whether the defendant's conduct has created a force or series of forces which are in continuous and active operation up to the time of the sale, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; and (3) lapse of time.

109 Wn.2d at 131-32. PwC argues that each investor relied upon a variety of factors in deciding whether to purchase the stock in question. It follows, says PwC, that its status as seller cannot be resolved with class-wide evidence. To the contrary, the fact-finder

ORDER - 11

will be required to proceed investor by investor.  According to PwC, this means individual issues of fact will predominate.

PwC concentrates upon the individual investor's decision-making process.  While not irrelevant, their respective decision-making processes are not the focus.  Instead, the focus is upon PwC's attributes, *i.e.*, whether it had the attributes of a seller.  *Id.* at 132.  Put somewhat differently, the issue is whether PwC's relationship to the sales can fairly be described as that of a seller of securities.  The plaintiffs allege PwC prepared audit letters that were included in the prospectus that went to each purchaser.  Perhaps this will be sufficient to establish that PwC was a seller; perhaps not.  Either way, the issue can be resolved with class-wide evidence.

**SUPERIORITY**

The plaintiffs must show that a class action is superior to individual actions in order to obtain certification of a (b)(3) class. At least three circumstances tend to weigh against a finding of superiority.  There is a comparatively small number of class members. They are readily identifiable, and some have participated in prior litigation.  That is not the end of the matter, however.  Other factors weigh in favor of a finding of superiority.  For example, individual class members tend to be elderly.  They lack the resources and sophistication necessary to prosecute individual actions against PwC, and their interest would best be served by participating in a class action.  On balance, the preceding factors support a finding of

ORDER - 12

superiority.

**CONCLUSION**

The plaintiffs are not entitled to a class-wide presumption that they relied upon PwC's alleged misstatements and omissions. They will be forced to prove reliance investor by investor, which means individual questions of law and fact will predominate. Consequently, the Court may not certify the proposed State Claims Class under Rule 23(b)(3). *See Binder*, 184 F.3d at 1063.

**IT IS HEREBY ORDERED:**

The plaintiffs' motion to certify The State Claims Class (**Ct. Rec. 590**) is denied.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this ___6th___ day of January, 2009.

                        s/Fred Van Sickle
                          Fred Van Sickle
        Senior United States District Judge

ORDER - 13