THE HONORABLE FRED VAN SICKLE

CARL J. ORESKOVICH (Bar No. 12779)
ETTER, McMAHON, LAMBERSON,
CLARY & ORESKOVICH, P.C.
Bank of Whitman, Suite 210
618 W. Riverside Avenue
Spokane, WA 99201
Telephone:   509-747-9100
Facsimile:    509-623-1438

JULIA B. STRICKLAND (Pro Hac Vice)
MARY D. MANESIS (Pro Hac Vice)
BRIAN C. FRONTINO (Pro Hac Vice)
GEORGE S. AZADIAN (Pro Hac Vice)
STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California  90067-3086
Telephone:   310-556-5800
Facsimile:    310-556-5959

Attorneys for Defendant
Roth Capital Partners, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re METROPOLITAN SECURITIES LITIGATION | No. CV-04-0025-FVS |
| | CLASS ACTION |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | REPLY OF DEFENDANT ROTH CAPITAL PARTNERS, LLC IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| | **ORAL ARGUMENT REQUESTED** |
| | Hearing Date:      January 5, 2009 Hearing Time:      9:00 a.m. |

- 1 -
REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY
JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................... 6

II.    ARGUMENT ..................................................................................... 6

    A.   Roth Is Entitled to Summary Judgment on its Due Diligence
       Defense. ............................................................................... 6

       1.   Roth's Diligence Defense May Be Resolved on
          Summary Judgment. ......................................................... 6

       2.   An Underwriter's Overall Investigation Need Only Be
          Reasonable at the Time, Not Perfect with the Benefit of
          Hindsight. .................................................................... 7

       3.   Roth Indisputably Conducted A Reasonable
          Investigation. ................................................................. 8

       4.   Plaintiffs Do Not Overcome Roth's Showing that Its
          Investigation Was Reasonable. .......................................... 10

    B.   Roth Reasonably Relied on the Auditors and Is Entitled to
       Summary Judgment as to the Audited Financial Statements. ................. 13

       1.   Roth Had No Obligation to Conduct Due Diligence into
          the Companies' Audited Financial Statements. ........................... 13

       2.   Plaintiffs Do Not Rebut the Showing that Roth
          Reasonably Relied on the Auditors. ..................................... 14

    C.   Roth Is Entitled to Summary Judgment as to Specific
       Statements That Are Not Actionable as a Matter of Law. ..................... 17

       1.   The Statements Concerning Reliance on Insurance
          Subsidiaries Are Not Misleading. ........................................ 18

       2.   The Subsidiary Disclosure Is Not Actionable Under the
          Safe Harbor Clause. ....................................................... 18

       3.   Plaintiffs Concede Summary Judgment as to Other
          Disclosures. ................................................................. 21

III.   CONCLUSION ................................................................................ 22

REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY
JUDGMENT
(Case No. CV-04-0025-FVS)

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067   (310) 556-5800

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Billington v. Smith,
   292 F.3d 1177 (9th Cir. 2002) .................................................................11

Blue Chip Stamps v. Manor Drug Stores,
   421 U.S. 723 (1975)..................................................................................14

Browne v. San Francisco Sheriff's Dept.,
   616 F. Supp. 2d 975 (N.D. Cal. 2009)......................................................21

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986)..................................................................................20

Ernst & Ernst v. Hochfelder,
   425 U.S. 185 (1976)..................................................................................14

Escott v. BarChris Construction Corp.,
   283 F. Supp. 643 (S.D.N.Y. 1968) ...........................................................17

Harris v. IVAX Corp.,
   182 F.3d 799 (11th Cir. 1999) ..................................................................19

In re Avant-Garde Computing, Inc. Sec. Litig.,
   No. 85-4149 (AET), 1989 WL 103625 (D.N.J. Sept. 5, 1989) ...........................7

In re Donald J. Trump Sec. Litig.,
   7 F.3d 357 (3d Cir. 1993) .........................................................................19

In re Gap Stores Sec. Litig.,
   79 F.R.D. 283 (9th Cir. 1978)....................................................................17

In re Int'l Rectifier Sec. Litig.,
   No. CV91-3357 RMT (BQRX), 1997 WL 529600,
   (C.D. Cal. March 31, 1997) .......................................................................7

In re Metropolitan Securities Litig.,
   532 F. Supp. 2d 1260 (E.D. Wash. 2007)..................................................21

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

In re Software Toolworks, Inc. Sec. Litig.,
    789 F. Supp. 1489 (N.D. Cal. 1992)....................................................8, 9, 11, 12

In re Software Toolworks, Inc. Sec. Litig.,
    50 F.3d 615 (9th Cir. 1994) ...............................................................passim

In re Stratosphere Sec. Litig.,
    66 F. Supp. 2d 1182 (D. Nev. 1999)...................................................21

In re WorldCom Sec. Litig.,
    346 F. Supp. 2d 628 (S.D.N.Y 2004) .................................................passim

In re Worlds of Wonder Sec. Litig.,
    814 F. Supp. 850 (N.D. Cal. 1993).....................................................14

In re Worlds of Wonder Sec. Litig.,
    35 F.3d 1407 (9th Cir. 1994) ..............................................................14

John Nuveen & Co. v. Sanders,
    450 U.S. 1005 (1981)..........................................................................14

Laven v. Flanagan,
    695 F. Supp. 800 (D.N.J. 1988) .........................................................7

Monroe v. Hughes,
    31 F.3d 772 (9th Cir. 1994) ................................................................11

Phillips v. Kidder, Peabody & Co.,
    933 F. Supp. 303 (S.D.N.Y. 1996) .....................................................7

Picard Chem. Inc. v. Perrigo Co.,
    Nos. 1:95-CV-141, 1:95-CV-290, 1998 WL 513091 (W.D. Mich. June 15,
    1998) ...................................................................................................8

T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n.,
    809 F.2d 626 (9th Cir. 1987) ..............................................................13

Weinberger v. Jackson,
    No. C-89-2301 (CAL), 1990 WL 260676 (N.D. Cal. Oct. 11, 1990) .................7

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

- 4 -

REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY
JUDGMENT
(Case No. CV-04-0025-FVS)

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

LA 51209474v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

# STATUTES

15 U.S.C. § 77k(b)(3) ................................................................................................6

15 U.S.C. § 77k(b)(3)(A) ................................................................................14, 16

15 U.S.C. § 77k(b)(3)(C) ................................................................................14, 16

15 U.S.C. § 77k(c) .............................................................................................8, 10

15 U.S.C. § 77z-2(a) .............................................................................................19

15 U.S.C. § 77z-2(c)(1)(B) ...................................................................................19

# RULES

Fed. R. Civ. P. 56(e)(2)........................................................................................21

- 5 -

REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY
JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

# I.    INTRODUCTION

Roth's Motion for summary judgment should be granted.  <u>First</u>, Roth has amply demonstrated that its "overall investigation" into Met and Summit, conducted over a several-year period, was undisputably "reasonable" at the time.  Nothing more is required to establish Roth's due diligence under Section 11.  <u>Second</u>, Roth reasonably relied on the companies' audited financial statements and the expert judgment of two nationally-renowned accounting firms as to the complex accounting issues challenged by plaintiffs.  The appropriate accounting treatment and disclosure of tax shelters, related party transactions and "negative common equity" is for the plaintiffs and auditors' numerous accounting experts to resolve; they do <u>not</u> provide the basis for any liability against Roth as an underwriter.  <u>Third</u>, plaintiffs do not respond to Roth's arguments concerning purportedly misleading risk disclosures, except one, effectively conceding that summary judgment is appropriate as to those risk disclosures.  Moreover, as to the one risk disclosure they do address (payments by insurance subsidiaries), plaintiffs failed to satisfy their burden, under the safe harbor, of proving that any officer had "actual knowledge" the disclosure was false or misleading; the disclosure, therefore, is not actionable.

Accordingly, Roth has no liability under Section 11, either for risk disclosures in the body of the registration statements or for the audited financial statements, and Roth's Motion for summary judgment should be granted in its entirety.

# II.    ARGUMENT

## A.    Roth Is Entitled to Summary Judgment on its Due Diligence Defense.

### 1.    Roth's Diligence Defense May Be Resolved on Summary Judgment.

An underwriter has no liability under Section 11 for statements that are not made on the authority of an expert, if the underwriter conducted a "reasonable investigation" and had a reasonable basis to believe, and did believe, the statements were true and complete at the time the registration statement became effective.  15

- 6 -

REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

U.S.C. § 77k(b)(3).  Tellingly, plaintiffs wholly ignore and fail to address <u>any</u> of the due diligence cases cited by Roth.  The Ninth Circuit has made clear that an underwriter's "due diligence" defense under Section 11 may be resolved on summary judgment.  <u>In re Software Toolworks, Inc. Sec. Litig. ("Toolworks II")</u>, 50 F.3d 615, 621-22 (9th Cir. 1994), <u>cert. denied</u>, 516 U.S. 907 (1995) (affirming the district court's grant of summary judgment and finding that the underwriters had, as a matter of law, "performed a thorough and reasonable investigation of Toolworks' Nintendo business") (citing <u>Weinberger v. Jackson</u>, No. C-89-2301 (CAL), 1990 WL 260676, at *3 (N.D. Cal. Oct. 11, 1990) (granting summary judgment in favor of underwriters based on the reasonableness of their diligence) and <u>In re Avant-Garde Computing, Inc. Sec. Litig.</u>, No. 85-4149 (AET), 1989 WL 103625 at *7-9 (D.N.J. Sept. 5, 1989) (granting summary judgment based on the diligence defense)).  District courts in other circuits have similarly granted summary judgment for underwriters based on the due diligence defense.  <u>See</u> <u>Phillips v. Kidder, Peabody & Co.</u>, 933 F. Supp. 303, 324 (S.D.N.Y. 1996) (granting summary judgment in favor of underwriters based on the reasonableness of their due diligence investigation as established through an affidavit); <u>see also</u> <u>Laven v. Flanagan</u>, 695 F. Supp. 800, 811-12 (D.N.J. 1988) (granting summary judgment based on the diligence defense).

> **2.    An Underwriter's Overall Investigation Need Only Be Reasonable at the Time, Not Perfect with the Benefit of Hindsight.**

As the language of Section 11 makes clear and courts in this Circuit have stressed, an underwriter's investigation (i.e., its diligence) need only be "reasonable, not perfect."  <u>In re Int'l Rectifier Sec. Litig.</u>, No. CV91-3357 RMT (BQRX), 1997 WL 529600, at *7 (C.D. Cal. March 31, 1997); <u>In re Software Toolworks, Inc. Sec. Litig. ("Toolworks I")</u>, 789 F. Supp. 1489, 1496-98 (N.D. Cal. 1992), <u>aff'd in part and rev'd in part</u>, 38 F.3d 1078 (9th Cir. 1994), <u>amended</u>, 50 F.3d at 615 (9th Cir. 1995).  In order to prevail on its diligence defense, Roth merely must establish that

- 7 -

REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

its investigation was no less than the investigation "a prudent man in the management of his own property" would have performed.  15 U.S.C. § 77k(c). Accordingly, Roth only needs to prove that it "reasonably attempt[ed] to verify and believe the accuracy of the information in [the offering materials]."  Toolworks I, 789 F. Supp. at 1496.

An underwriter will prevail on a due diligence defense under Section 11 if its "overall investigation" was reasonable.  Toolworks I, 789 F. Supp. at 1496.  Courts have stressed that a reasonable investigation does not require an "audit."  Id.  As the district court explained in Toolworks I:

> Underwriters cannot be expected to ferret out everything that management knows about the company; they only need to reasonably attempt to verify and believe the accuracy of the information in the prospectus.  If the Underwriter's overall investigation was reasonable under the circumstances, they are entitled to a due diligence defense. [citation omitted]

Id.  Critically, and fatally for plaintiffs' Opposition, Roth's diligence cannot be evaluated in hindsight.  Id. at 1498 n.14.  Rather, Roth's overall investigation need only have been "reasonable under the circumstances at the time of the investigation." Id.

### 3.    Roth Indisputably Conducted A Reasonable Investigation.

As demonstrated in its Motion, Roth's due diligence approach – conducting an exhaustive, six-month initial investigation into the Metropolitan Group for the first offerings, and bringing forward its diligence for each subsequent offering by conducting onsite meetings with management and verifying management's representations through document requests and review and discussions with the companies' outside auditors and outside counsel – was reasonable.  (Roth's Mot. at 7-8); Picard Chem. Inc. v. Perrigo Co., Nos. 1:95-CV-141, 1:95-CV-290, 1998 WL 513091, at *14-17 (W.D. Mich. June 15, 1998) (granting summary judgment in favor of underwriter and taking into account its "substantial base of knowledge" from prior

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

- 8 -

REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY
JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1  offerings for the company).  Moreover, the totality of Roth's diligence over a

2  several-year period, i.e., its "overall investigation," was indisputably reasonable.  See

3  Toolworks I, 789 F. Supp. at 1496 ("If the Underwriter's overall investigation was

4  reasonable under the circumstances, they are entitled to a due diligence defense.").

5  Roth's diligence team was equally reasonable, comprised of:  (i) seasoned

6  securities counsel (Barwick), who had significant experience performing due

7  diligence and conducted key diligence for all of the offerings for which Roth served

8  as QIU;[1] (ii) a senior Roth banker with significant public offering experience, who

9  actively participated in diligence by visiting the companies and interviewing

10  management (Gurewitz);[2] and (iii) a mid-level banker (Stephenson),[3] who worked

11  under the supervision of the senior banker and closely with Roth's outside securities

12  counsel, to conduct diligence for all the offerings in 2001-2002, including the four

13  offerings at issue here.

14  Roth's cumulative diligence indisputably provided Roth a reasonable basis to

15  believe that the four registration statements at issue were true and complete.  As

16  demonstrated in its Motion, the Roth team, among other due diligence:  conducted

17  onsite interviews annually with numerous members of management, generally over a

18  two-day period; requested voluminous documents from the companies to

19  independently verify management's representations; conducted cash flow modeling

20  and comparable company analyses in addition to reviewing the companies' financial

21  statements; engaged in discussions with the companies' auditors regarding a wide

22  range of financial and management issues; engaged in discussions with the

23  companies' outside counsel, Kutak Rock; obtained "comfort letters" from the

24

25  [1] (Roth's SS ¶ 14.)

26  [2] Declaration of Aaron Gurewitz, ¶¶ 1-7 (plaintiffs elected not to depose Gurewitz).

27  [3] (Plaintiffs' SOF Ex. E, 8:17 - 9:23.)

28
- 9 -
REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY
JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1   auditors with regard to the accuracy of the financial statements; and obtained "10b-5

2   opinion letters" from Kutak Rock, verifying that during the course of its independent

3   and extensive diligence, discussions with management and the auditors, Kutak Rock

4   did not learn of anything indicating that the registration statements were false or

5   misleading.  (Roth's Mot. at 7-15.)  Plainly, Roth's investigation into the companies

6   was at least equal to, if not significantly greater than, the investigation "a prudent

7   man in the management of his own property" would have performed and thus was

8   "reasonable" as a matter of law.  See 15 U.S.C. § 77k(c).

9       **4.     Plaintiffs Do Not Overcome Roth's Showing that Its Investigation**

10      **Was Reasonable.**

11          None of the arguments advanced by plaintiffs defeats Roth's showing that its

12  due diligence was reasonable and that Roth is entitled to judgment as a matter of law.

13  As an initial matter, contrary to plaintiffs' assertion, Roth cites demonstrable facts –

14  not simply inferences – establishing that it conducted a reasonable investigation into

15  the companies.  As but one example, the reasonableness of Roth's investigation into

16  Met and Summit's change of auditors is evidenced by the deposition testimony of

17  Barwick, documents obtained during Roth's due diligence investigation and notes

18  from the Roth team's discussions with both auditors.  (Roth's Mot. at 15.)  This

19  evidence demonstrates that the Roth team did not simply accept management's

20  representations regarding the reason for the change in auditors; rather, Roth

21  discussed the change directly with PwC, which reported that it was closing its

22  Spokane office;[4] obtained Met's board minutes, which confirmed that PwC was

23  closing its Spokane office and that Met had retained EY,[5] and the companies' Form

24  8-Ks, which reported that the companies were changing auditors and there had been

25  no disagreements with PwC as to any accounting principles, practices, financial

26  

27      [4] (Roth's SS ¶ 75.)

        [5] (Roth's SS ¶ 76.)

28                                                    - 10 -
    REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY
    JUDGMENT
    (Case No. CV-04-0025-FVS)

    LA 51209474v1

statement disclosures, auditing scope or procedure issues;[6] and spoke with EY after it commenced the engagement, which reported that the companies' "prior CFO and auditors did things the right way," the companies had a "very active, control conscious internal audit group in place," and EY hadn't "found anything that would keep them up at night."[7]

Moreover, the fact that the parties' experts have different opinions is self-evident and does not create genuine issues of material fact nor does it, as plaintiffs contend, preclude summary judgment. See <u>Toolworks I</u>, 789 F. Supp. at 1496 (summary judgment is an appropriate means of resolving due diligence issues to avoid a "battle of experts" and forcing jurors to decide between "paid advocates"). This is particularly true here, where Roth does <u>not</u> rely on its expert's opinions or report in moving for summary judgment. Indeed, if plaintiffs' argument – that competing experts automatically preclude summary judgment – is accepted, any party could avoid summary judgment simply by retaining an expert witness who disagrees with the adverse party's arguments. The Ninth Circuit soundly has rejected this strategy. See <u>Billington v. Smith</u>, 292 F.3d 1177, 1189 (9th Cir. 2002) (a party may not avoid summary judgment by simply producing an expert report that contradicts its adversary's arguments); <u>see also</u> <u>Monroe v. Hughes</u>, 31 F.3d 772, 775-76 (9th Cir. 1994) (affirming summary judgment in favor of an auditor on a Section 11 claim despite the opinion of the plaintiffs' expert that the auditor failed to satisfy its due diligence defense as to the expertised portion of the registration statement).

Plaintiffs' arguments that Roth should have done further diligence into the companies, or placed a different banker on the diligence team, similarly fail to demonstrate that Roth's investigation was not "reasonable" and do not defeat summary judgment. (<u>See, e.g.</u>, Plaintiffs' Opp. at 11-12, arguing that Roth did not

---

[6] (Roth's SS ¶ 77-78.)

[7] (Roth's SS ¶ 63.)

- 11 -

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1   correctly compare the companies' actual to budgeted performance).  The district

2   court's thoughtful discussion on due diligence in <u>Toolworks I</u> is instructive here.  In

3   <u>Toolworks I</u>, the court noted that despite plaintiffs' effort to create a factual dispute,

4   summary judgment was appropriate because the parties' disagreement centered, as it

5   does here, on whether the due diligence performed was reasonable.  <u>Toolworks I</u>,

6   789 F. Supp. at 1495 ("The disagreement between Plaintiffs and the Underwriters

7   revolves around whether the due diligence performed was enough to entitle the

8   Underwriters to a statutory defense under Section 11.").  The court rejected

9   plaintiffs' contention that had the underwriters "done more, they would have

10  revealed problems," finding that the diligence could not be assessed with the benefit

11  of hindsight and the overall investigation was reasonable under the circumstances at

12  the time.  <u>Id.</u> at 1498 n.14.

13      These are precisely the arguments raised by plaintiffs in response to Roth's

14  Motion – not that Roth failed to conduct due diligence but, rather, that Roth's due

15  diligence was not "meaningful" or that specific actions taken by Roth in conducting

16  due diligence were "irrelevant."  (<u>See, e.g.</u>, Plaintiffs' SOF 133, 137, 139, 152, 160,

17  162, 165, 170, 173-74, 176, 178, 180-82, 187-89, 254, 258.)  Moreover, plaintiffs'

18  criticisms of Roth's diligence are based entirely on hindsight, after almost six years

19  of bankruptcy proceedings, malpractice actions against the companies' auditors,

20  expert witnesses analyzing the factual record for hundreds of hours, and the

21  expenditure of millions of dollars.  Given these resources and the benefit of

22  hindsight, it would be surprising if plaintiffs did not argue that Roth's investigation

23  somehow was imperfect.  However, Roth need not establish the perfection that

24  plaintiffs demand – Roth has established all that is required of an underwriter, an

25  <u>overall reasonable</u> investigation at the time.  <u>Toolworks I</u>, at 1498 n.14.

26      Finally, plaintiffs' frivolous argument that Roth knowingly acquiesced in

27  misleading disclosures concerning conflicts of interest is not supported by the record

28
- 12 -

REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY
JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1   and does not create any genuine issues of material fact.  The sole evidence cited by

2   plaintiffs is a letter containing proposed language that Roth's securities counsel

3   (Barwick) sent to the companies' in-house counsel in 1998, early in the drafting

4   process for then-pending offerings and more than three years before the earliest

5   registration statement at issue here.  (<u>See</u> Plaintiffs' SOF Ex. H.)  The letter clearly

6   states that Barwick was "suggesting" certain revisions to be made "as appropriate,"

7   not that Roth thought that the current language was misleading.  (<u>See id.</u>)  This

8   process is common during the preparation of registration statements, where the

9   various participants propose changes – some of which are ultimately adopted, while

10  others are not.  Tellingly, however, plaintiffs point to no evidence whatsoever

11  concerning whether the companies' counsel responded to the language suggested by

12  Barwick and if so, what the response was, whether there were any further

13  communications concerning the language, or the reasons for the language included in

14  the final offering materials.[8]   This argument is sheer speculation on plaintiffs' part

15  and not a reasonable inference that may be drawn from the record.  See <u>T.W. Elec.</u>

16  <u>Service, Inc. v. Pacific Elec. Contractors Ass'n.</u>, 809 F.2d 626, 631 (9th Cir. 1987)

17  (inferences may only be drawn in the nonmoving party's favor if they are rational

18  and reasonable).

19  **B.      Roth Reasonably Relied on the Auditors and Is Entitled to Summary**

20  **Judgment as to the Audited Financial Statements.**

21        **1.      Roth Had No Obligation to Conduct Due Diligence into the**

22              **Companies' Audited Financial Statements.**

23        The Ninth Circuit has made clear that an underwriter need <u>not</u> conduct any

24  diligence into the "expertised" parts of a registration statement, here the audited

---

26  [8] Plaintiffs elected not to depose any officers, directors or employees of the
27  Metropolitan Group and question them regarding the offering materials or any other
    subject.

28
REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY
JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

financial statements.  Toolworks II, 50 F.3d at 623.  Rather, an underwriter cannot be held liable for audited financial statements if it proves that it "had no reasonable ground and did not believe" the financial statements were untrue or incomplete at the time the registration statement became effective.  Id.; 15 U.S.C. § 77k(b)(3)(C).[9]  Accordingly, the Ninth Circuit has consistently held that an underwriter establishes a "reliance defense" under Section 11 by showing that it reasonably relied on the audited financial statements and the auditors' expert judgment.  See Toolworks II, 50 F.3d at 624; In re Worlds of Wonder Sec. Litig. ("WOW I"), 814 F. Supp. 850, 864-65 (N.D. Cal. 1993), aff'd in relevant part by, In re Worlds of Wonder Sec. Litig. ("WOW II"), 35 F.3d 1407, 1421 (9th Cir. 1994), cert. denied, 516 U.S. 868, 909 (1995).  As Justice Powell explained, "[t]his provision is in the Act because, almost by definition, it is reasonable to rely on financial statements certified by public accountants."  John Nuveen & Co. v. Sanders, 450 U.S. 1005, 1009 (1981) (Powell, J., dissenting from denial of cert.).

### 2. Plaintiffs Do Not Rebut the Showing that Roth Reasonably Relied on the Auditors.

Plaintiffs do not directly respond to, much less proffer facts to rebut, Roth's showing that it reasonably relied on nationally-renowned accounting firms PwC and EY.  Nor do plaintiffs even acknowledge the applicable standard under Section 11 for underwriters to establish their "reliance defense" (no reason to believe and did not believe audited financial statements were false or misleading).  Plaintiffs'

---

[9] Compare 15 U.S.C. § 77k(b)(3)(C), no liability as to expertised statements if a person had "no reasonable ground to believe and did not believe" the statements were untrue or incomplete, with 15 U.S.C. § 77k(b)(3)(A), no liability as to non-expertised statements if a person "had, after reasonable investigation, reasonable ground to believe and did believe" the statements were true and complete. (Emphasis added.)  The difference in language is significant, because in the Securities Act, Congress has used its words with precision.  See, e.g., Ernst & Ernst v. Hochfelder, 425 U.S. 185, 198-201 (1976); Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 755 (1975).

- 14 -

REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067   (310) 556-5800

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1  arguments are murky at best, but they appear to contend that Roth is liable for the

2  audited financial statements based on a handful of accounting issues – the "FLIP"

3  and "Koa" transactions, "negative common equity" reflected in the financial

4  statements, and information contained in the financial statements regarding the

5  insurance subsidiaries' ability to make payments to Met and Summit.  (Plaintiffs'

6  Opp. at 10, 13.)  None of these issues defeats Roth's reliance defense.

7      To the extent plaintiffs assert these issues somehow constituted "red flags,"

8  plaintiffs distort and misapply Ninth Circuit law concerning an underwriter's right to

9  rely on audited financial statements under Section 11.  The Ninth Circuit has

10  recognized that an underwriter's reliance on auditors may not be "blind" – where red

11  flags concerning the reliability of audited financial statements emerge in the course

12  of diligence, mere reliance on an audit will not be sufficient to ward off liability.

13  Toolworks II, 50 F.3d at 624.  However, plaintiffs ignore the significant limitations

14  on an underwriter's potential liability for accounting red flags.  First, the Ninth

15  Circuit has reasoned that one important factor in determining whether an item

16  constitutes a "red flag" is the complexity of the underlying accounting issue – the

17  more complex an accounting issue, the less likely it is to be deemed a "red flag."  See

18  WOW II, 35 F.3d at 1421.  In WOW II, the Ninth Circuit explained that the

19  contested revenue recognition was a complex accounting issue as evidenced by "over

20  100 pages" of conflicting expert testimony on the subject.  Id.  The court held that

21  given the complexity of this accounting issue, it was "absurd" for plaintiffs to argue

22  that it constituted a "red flag" as to the underwriters.  Id. (granting summary

23  judgment for the underwriters as to the audited financial statements).  Here, there are

24  more than 400 pages of conflicting expert reports regarding supposed accounting

25  "red flags," which focus on two exceedingly complex accounting issues:  (1) the

26  FLIP transaction (a tax shelter transaction); and (2) the Koa transaction (a related

27  party transaction between Met and Summit involving the sale of a stream of cash

28

- 15 -

REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY
JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

flows).[10]  Both of these transactions are fully disclosed in the notes to the audited financial statements.[11]  Plaintiffs' assertion that these two complex accounting transactions raised "red flags" and impose liability on Roth for the audited financial statements, is "absurd."  See id.

Second, the Ninth Circuit has emphasized that "red flags" must be just that – something that grabs an underwriter's attention, not an issue that requires an independent analysis of the financial statements to uncover.  See Toolworks II, 50 F.3d at 624.  For example, in Toolworks II, the Ninth Circuit used the term "red flag" to refer to a memo the underwriters reviewed as part of their normal diligence, which specifically stated that the company and one of its customers had "backdated" an agreement to allow the company to recognize revenue that, in fact, was not earned. Id.  This obvious "red flag" is in stark contrast to the "negative common equity" that plaintiffs raise here – a term that is not mentioned anywhere in the financial statements and which plaintiffs argue Roth should have "calculated" from the numbers in the audited financial statements.[12]  The assertion that Roth was required to undertake such calculations to uncover this purported "red flag" makes a mockery of the "reliance" defense and destroys the statutory dichotomy between an underwriter's diligence defense and reliance defense.  See 15 U.S.C. § 77k(b)(3)(A); see also 15 U.S.C. § 77k(b)(3)(C).

As to plaintiffs' argument concerning the financial statements and the insurance subsidiaries' ability to make upstream payments, it is not clear what

---

[10] Plaintiffs and the auditors collectively have retained three experts dedicated solely to examine the FLIP transaction and three additional experts to analyze both the FLIP and Koa transactions, resulting in a battle of six accounting experts.

[11] (See, e.g., Roth's RJN Ex. F at F-33 (note regarding income taxes, including the FLIP transaction – described as a "deferred tax asset"; see, e.g., Roth's RJN Ex. F at F-41 (note regarding related party transactions, including the Koa transaction – described as the sale of a contract receivable collateralized by timber harvesting rights).)

[12] (Plaintiffs' SOF Ex. E at 78:2-17.)

- 16 -

REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

plaintiffs are contending.  To the extent plaintiffs seek to hold Roth liable for a failure to disclose more clearly the subsidiaries' limited or non-existent ability to make payments in the financial statements, Roth reasonably relied on the auditors and their judgment on how information concerning the subsidiaries should be presented in the financial statements.  (Plaintiffs' Opp. at 13, asserting that information concerning subsidiaries was "buried" in the financial statements.)  Moreover, as discussed below, the body of the registration statements fully disclosed the risks that the insurance subsidiaries might not be able to make payments to their parents for a number of reasons and the factors that could prevent such payments.

The seminal diligence case, Escott v. BarChris Construction Corp., 283 F. Supp. 643 (S.D.N.Y. 1968), further demonstrates that even where an underwriter does not examine a single accounting record the underwriter is still entitled to rely on audited financial statements.[13]  Accordingly, as in Toolworks II, WOW II and BarChris, Roth was indisputably entitled to rely on the audited financial statements and auditors and, thus, is entitled to summary judgment as to the financial statements.

## C.     Roth Is Entitled to Summary Judgment as to Specific Statements That Are Not Actionable as a Matter of Law.

Plaintiffs have failed to rebut Roth's showing that many of the challenged statements in the body of the registration statements simply are not actionable as a matter of law.  Plaintiffs address only the statements concerning Met and Summit's reliance on subsidiaries in their Opposition; plaintiffs' futile arguments, however, do not save their subsidiary disclosure claims.  Plaintiffs fail to respond to Roth's arguments as to other challenged statements, effectively conceding that summary judgment is appropriate as to those statements.

---

[13] See In re Gap Stores Sec. Litig., 79 F.R.D. 283, 299 (9th Cir. 1978) (recognizing BarChris as persuasive authority regarding the Section 11 defenses).

REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1.     **The Statements Concerning Reliance on Insurance Subsidiaries Are Not Misleading.**

As amply demonstrated in the Motion, the statement that Met and Summit "will rely," in part, on subsidiaries to make payments to them in order to make payments to investors, is neither misleading nor actionable.  In an effort to avoid this inescapable conclusion, plaintiffs mischaracterize the statements concerning the insurance subsidiaries, contending that they "imply" that Met and Summit expected to receive significant payments from the subsidiaries.  However, it is the actual language of the statements, not plaintiffs' spin, which must be considered in determining whether the statements are misleading or actionable.  Critically, plaintiffs' entire "will rely" argument is based on a snippet of language in the heading of the risk factor.  However, it is well settled that in judging the accuracy of a disclosure, "the inquiry must focus not on whether particular statements, taken separately, were literally true, but whether defendants' representations, taken together and in context" were accurate.  <u>In re WorldCom Sec. Litig.</u>, 346 F. Supp. 2d 628, 658 (S.D.N.Y 2004) (citation omitted).

When the statements concerning the insurance subsidiaries are read in their entirety, as they must be, it is clear the statements do not state or suggest that the companies expected significant payments from the subsidiaries.  To the contrary, as detailed in the Motion, the registration statements identify a number of reasons that the companies might not receive any, much less significant, payments from the subsidiaries.  (Roth's Mot. at 25-26.)

2.     **The Subsidiary Disclosure Is Not Actionable Under the Safe Harbor Clause.**

The statutory safe harbor plainly applies to the statement regarding the companies' reliance on payments from subsidiaries, which is protected under both prongs of the safe harbor.  <u>First</u>, contrary to plaintiffs' suggestion, there is nothing in

- 18 -

REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1    the language of the safe harbor that suggests only the person or entity that made the

2    statement is protected.  See 15 U.S.C. § 77z-2(a) (the safe harbor applies to

3    statements made by an issuer).  Additionally, such an overly restrictive interpretation

4    is at odds with the bespeaks caution doctrine, which the safe harbor codified and

5    which provides protection to third parties for forward-looking statements made by

6    issuers.  See WOW II, 35 F.3d at 1415-16 (affirming summary judgment on

7    bespeaks caution doctrine as to underwriter, Smith Barney); see also In re Donald J.

8    Trump Sec. Litig., 7 F.3d 357, 371-73 (3d Cir. 1993) (affirming motion to dismiss on

9    bespeaks caution doctrine as to underwriter, Merrill Lynch).  Moreover, plaintiffs

10   admit that Roth participated in drafting registration statements.  (Plaintiffs' SOF ¶

11   129.)  Second, the statement that the companies "will rely" on payments from

12   subsidiaries to make payments to investors speaks to future events and plainly is

13   forward-looking within the meaning of the safe harbor.  See Harris v. IVAX Corp.,

14   182 F.3d 799, 805 (11th Cir. 1999) (statement is forward-looking when its truth or

15   falsity is ascertainable only after the statement is made).

16       Since the statement is forward-looking, it is protected under the second prong

17   of the safe harbor if plaintiffs fail to prove that an executive officer who approved the

18   registration statement had "actual knowledge" the statement was false or misleading,

19   irrespective of whether the statement is accompanied by any cautionary language.  15

20   U.S.C. § 77z-2(c)(1)(B); Harris, 182 F.3d at 803 ("Even if the forward-looking

21   statement has no accompanying cautionary language, the plaintiff must prove that the

22   defendant made the statement with 'actual knowledge' that it was 'false or

23   misleading.'").  Plaintiffs do not satisfy their heavy burden.  Utterly unable to prove

24   actual knowledge by an officer, plaintiffs simply grasp at straws.  Plaintiffs first point

25   to the companies' purported refusal to revise conflict of interest disclosures.

26   However, a supposed refusal to change conflict of interest disclosures does not

27   provide any evidence that officers had knowledge that a different disclosure

- 19 -

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

1   concerning payments from subsidiaries was false or misleading.  Moreover, as

2   discussed above, there is no support in the record, nor is it reasonable to infer, that

3   the companies "refused" to revise conflict of interest disclosures.  Plaintiffs' generic

4   assertion that management had "detailed knowledge of the insurance subsidiaries"

5   similarly fails to establish that an officer approving the registration statements had

6   actual knowledge that the specific statement concerning reliance on payments from

7   subsidiaries was false or misleading.

8       Plaintiffs' diversionary arguments concerning officer certificates are equally

9   unavailing.  Roth merely noted that officers had represented in officer certificates

10  they were not aware of any misrepresentations or omissions in the offering materials.

11  The burden, however, remains squarely on <u>plaintiffs</u> to provide evidence of officers'

12  actual knowledge under the safe harbor – a burden plaintiffs wholly fail to satisfy.[14]

13  Accordingly, Roth is entitled to summary judgment as to these claims.  <u>Celotex</u>

14  <u>Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (moving party is entitled by summary

15  judgment by "pointing out . . . that there is an absence of evidence to support the

16  nonmoving party's case"(citations omitted)).

---

20  [14] Although the knowledge prong of the safe harbor fully disposes of plaintiffs'
    claims, the statement concerning payments from subsidiaries also is not actionable
21  under the cautionary language prong.  As detailed in the Motion, the statement that
    the companies "will rely," in part, on payments from subsidiaries to make payments
22  to investors was identified as forward-looking and accompanied by meaningful
    cautionary language identifying important factors that could prevent the subsidiaries
23  from making payments, i.e., cause actual results to differ materially from those in the
    forward-looking statement.  (Roth's Mot. 25-26; <u>see also</u> Roth's RJN, Ex. A at 11,
24  Roth's RJN, Ex. B at 13, Roth's RJN, Ex. C at 13, Roth's RJN, Ex. D at 11-12 (all
    specifically identifying "Risk Factors" as forward-looking statements under the
25  PSLRA.))

REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY
JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

**3.     Plaintiffs Concede Summary Judgment as to Other Disclosures.**

Plaintiffs do not respond to Roth's arguments as to other disclosures – concerning the Koa litigation, use of proceeds, compliance with NASD suitability standards and the effect of MIS's inability to sell securities – and thus effectively concede summary judgment as to these claims.  Browne v. San Francisco Sheriff's Dept., 616 F. Supp. 2d 975, 986 (N.D. Cal. 2009) ("it is the burden of the party opposing summary judgment to make an affirmative showing on all matter placed in issue by the motion."); In re WorldCom Sec. Litig., 346 F. Supp. 2d at 687 ("Because the Lead Plaintiff has not addressed the Underwriter Defendants' arguments in support of summary judgment on omission items 12-18, and 20, summary judgment is granted with respect to them."); see also Fed. R. Civ. P. 56(e)(2).

More specifically, plaintiffs do not oppose Roth's arguments that:

- Plaintiffs lack evidence proving that the use of proceeds disclosures were approved by an executive officer who had "actual knowledge" that the statements were false or misleading.  See In re Stratosphere Sec. Litig., 66 F. Supp. 2d 1182, 1196 (D. Nev. 1999) (use of proceeds disclosures are forward-looking statements and plaintiffs must prove that an executive officer had actual knowledge the disclosure was false); (see also Roth's Mot. at 27).

- Plaintiffs lack evidence proving the NASD suitability disclosure was approved by an executive officer who had "actual knowledge" that the disclosure was false or misleading.  (See Roth's Mot. at 27.)

- Plaintiffs have failed to identify any affirmative statement made misleading by the alleged omission "if MIS was unable to continue to sell securities the Metropolitan Group would quickly become insolvent." See In re Metropolitan Securities Litig., 532 F. Supp. 2d 1260, 1290 (E.D. Wash. 2007); (see also Roth's Mot. at 28).

- The Koa litigation, which plaintiffs claim was never disclosed, was indeed disclosed.  (See Roth's Mot. at 26.)

For these additional reasons, Roth is entitled to summary judgment as to all of these disclosures.

REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

### III.   <u>CONCLUSION</u>

In conclusion, Roth respectfully requests that the Court grant its Motion for summary judgment in its entirety.  In the alternative, Roth requests that the Court enter partial summary judgment in its favor:  (1) as to any alleged misstatements or omissions in the audited financial statement incorporated in the registration statements; and (2) as to the alleged misstatements and/or omissions in the registration statements identified in the Section V.C. in its Motion.

November 20, 2009                STROOCK & STROOCK & LAVAN LLP

By:   /s/ Mary D. Manesis
      MARY D. MANESIS, *Pro Hac Vice*
      2029 Century Park East
      Los Angeles, CA  90067
      Telephone:  310-556-5800
      Facsimile:   310-556-5959
      Email:  mmanesis@stroock.com
      Attorneys for Defendant
      Roth Capital Partners, LLC

- 22 -
REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 21, 2009 I electronically filed the foregoing document described as:  REPLY OF DEFENDANT ROTH CAPITAL PARTNERS, LLC IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record on the CM/ECF for this litigation.


/s/  Mary D. Manesis
Mary D. Manesis

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

- 23 -
REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY
JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 21, 2009, I electronically filed the foregoing document described as:

REPLY OF DEFENDANT ROTH CAPITAL PARTNERS, LLC IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| George S Azadian | gazadian@stroock.com<br>cdusi@stroock.com |
| James K Barbee | jim@golbeckroth.com |
| Philip S Beck | anne.doyle@bartlit-beck.com,<br>susan.dandrea@bartlit-beck.com |
| Ronald L Berenstain | rberenstain@perkinscoie.com,<br>jstarr@perkinscoie.com |
| Steve W Berman | steve@hbsslaw.com,heatherw@hbsslaw.com,<br>carrie@hbsslaw.com |
| Alison Killen Blair | ablair@orrick.com |
| Brian D Buckley | bbuckley@fenwick.com,kroth@fenwick.com,<br>doconnor@fenwick.com |
| Elizabeth J Cabraser | ecabraser@lchb.com |
| Kelly P Corr | kcorr@corrcronin.com,dpatterson@corrcronin.com<br>reception@corrcronin.com |
| James P Cusick | jcusick@orrick.com |
| Christopher G Emch | emchc@foster.com,pateb@foster.com |
| Timothy J Filer | filet@foster.com,howej@foster.com |
| Erin K Flory | erin@hbsslaw.com,jon@hbsslaw.com |
| Steven Fogg | sfogg@corrcronin.com,hpowell@corrcronin.com |
| Brian C. Frontino | bfrontino@stroock.com,lacalendar@stroock.com |
| E Joseph Giometti | jgiometti@orrick.com,jcopoulos@orrick.com,<br>pbenetz@orrick.com |

REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

| | |
|---|---|
| Peter Jennings Grabicki | pjg@randanco.com,nlg@randanco.com, scc@randanco.com |
| Gary I Grenley | ggrenley@grebb.com |
| Richard M Heimann | rheimann@lchb.com,lsimms@lchb.com |
| Kenneth P Herzinger | kherzinger@orrick.com |
| David D Hoff | dhoff@tousley.com,btaylor@tousley.com |
| Lester C Houtz | lester.houtz@bartlit-beck.com, anne.doyle@bartlit-beck.com |
| James E Howard | howard.james@dorsey.com, summers.shawn@dorsey.com, hall.michelle@dorsey.com |
| John M Hughes | john.hughes@bartlit-beck.com |
| Bradley B Jones | bjones@gth-law.com, sthomas@gth-law.com,glane@gth-law.com |
| Stellman Keehnel | stellman.keehnel@dlapiper.com, nina.marie@dlapiper.com |
| Kenneth G Kieffer | kkieffer@gth-law.com,lhoober@gth-law.com |
| James Bernard King | jking@ecl-law.com,kschulman@ecl-law.com |
| Christopher D Landgraff | chris.landgraff@bartlit-beck.com |
| Christopher Lind | chris.lind@bartlit-beck.com, anne.doyle@bartlit-beck.com |
| Mary D Manesis | mmanesis@stroock.com,cdusi@stroock.com |
| J. Scott McBride | scott.mcbride@bartlit-beck.com |
| James P McNeill, III | mcnej@foster.com |
| Jeffrey S Miller | milje@foster.com,kellie@foster.com, hickc@foster.com, snydd@foster.com |
| Meredith Moss | mmoss@orrick.com |
| John Degnan Munding | munding@crumb-munding.com, brittany@crumb-munding.com |
| Robert J Nelson | rnelson@lchb.com |
| Kevin Daniel O'Rourke | kevin@southwellorourke.com |

- 25 -

REPLY IN SUPPORT OF ROTH'S MOTION FOR SUMMARY JUDGMENT
(Case No. CV-04-0025-FVS)

LA 51209474v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067   (310) 556-5800

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

| | |
|---|---|
| Carl Joseph Oreskovich | carl@ettermcmahon.com, roni@ettermcmahon.com |
| Andrew K Polovin | andrew.polovin@bartlit-beck.com,anne.doyle@bartlit-beck.com |
| Mark Roth | mark@golbeckroth.com |
| Stephen Michael Rummage | steverummage@dwt.com,jeannecadley@dwt.com |
| Darrell W Scott | scottgroup@mac.com,ssimatos@mac.com |
| F Mike Shaffer | fshaffer@gth-law.com,ksnyder@gth-law.com |
| James M Shaker | shaker@ryanlaw.com,callahan@ryanlaw.com |
| Daniel F Shea | dfshea@hhlaw.com |
| Kim D Stephens | kstephens@tousley.com,bkinsey@tousley.com |
| Julia B Strickland | jstrickland@stroock.com,lacalendar@stroock.com, tmitchell@stroock.com |
| Michael S Strube | sstrube@orrick.com,gjohnson@orrick.com |
| Earl M Sutherland | esutherland@rmlaw.com,jlading@rmlaw.com |
| Paul H Trinchero | ptrinchero@grebb.com |
| Fabrice Vincent | fvincent@lchb.com,dclevenger@lchb.com |
| Leslie Richard Weatherhead | lwlibertas@aol.com,emilyr@wkdtlaw.com, janetj@wkdtlaw.com |
| Tyler S Weaver | tyler@hbsslaw.com,jeniphr@hbsslaw.com,bonneym@hbsslaw.com |
| Diana Lynn Weiss | dweiss@orrick.com |
| Charles S Wright | charleswright@dwt.com,terriray@dwt.com |

/s/  Mary D. Manesis
Mary D. Manesis

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

- 26 -

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067    (310) 556-5800