UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re METROPOLITAN SECURITIES LITIGATION | No. CV-04-25-FVS<br><br>ORDER RE THE EXPECTED TESTIMONY OF KENNETH LEHN |

**THIS MATTER** comes before the Court without oral argument based upon the plaintiffs' motion to exclude the expected testimony of Kenneth Lehn.

**BACKGROUND**

PricewaterhouseCoopers LLP ("PwC") audited the Fiscal Year ("FY") 2000 financial statements for Metropolitan Mortgage & Securities Co., Inc., ("Met"), and Summit Securities, Inc. ("Summit"). The plaintiffs have retained accountant Harris L. Devor to review PwC's work. He is convinced PwC made accounting errors that allowed both companies to overstate their FY 2000 income. Met and Summit incorporated their FY 2000 financial statements into registration statements they filed with the Securities and Exchange Commission ("SEC"). The SEC declared the registration statements effective. Thereafter, the plaintiffs purchased securities from Met and Summit through Metropolitan Investment Securities, Inc. ("MIS"). The value of the plaintiffs' publicly-traded securities collapsed during the second half of 2003. They seek damages from PwC under Section 11 of the Securities Act of

ORDER - 1

1933.  15 U.S.C. § 77k(a).  In order to recover, they must prove PwC's alleged accounting errors were material to their decision to purchase securities from Met and Summit.  The test is whether there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (internal punctuation and citation omitted).  PwC has retained economist Kenneth Lehn, Ph.D., to evaluate the materiality of its alleged accounting errors.  Not only does he think a reasonable investor would have understood the securities at issue here were "high risk, speculative investments," but also he thinks the accounting errors alleged by the plaintiffs would not have been material to a reasonable investor during 2002 and/or 2003.  The plaintiffs claim Dr. Lehn's opinions are not admissible under Federal Rule of Evidence 702. First, they argue jurors do not need expert testimony in order to decide whether PwC's alleged errors were material.  Second, they argue Dr. Lehn does not understand the correct standard for determining materiality.  Third, they argue he erred by minimizing the significance of the errors cited by their accounting expert.

**RULING**

The plaintiffs argue materiality is a question of fact that the jury must decide.  According the plaintiffs, expert testimony is unnecessary.  PwC observes that Rule 702 allows parties to offer expert testimony to help jurors resolve questions of fact. Furthermore, on numerous occasions, district courts have admitted

ORDER - 2

expert testimony regarding the issue of materiality. *See, e.g., Miller v. Thane International Inc.*, 519 F.3d 879, 889 (9th Cir.2008) ("The district court received testimony from both sides' experts on the question of materiality.").[1] PwC argues Dr. Lehn's testimony will help the jury understand how its alleged accounting errors fit into the total mix of information that was available to investors. This is a legitimate purpose for seeking admission of Dr. Lehn's testimony. Thus, the plaintiffs are incorrect in asserting it is unnecessary.

The plaintiffs claim Dr. Lehn has made statements indicating he does not understand accountants and economists use the same definition of the term "materiality" when assessing whether an accounting error is material. Given Dr. Lehn's alleged misstatements, the plaintiffs argue he does not understand the correct standard for determining materiality. The plaintiffs' allegation is not supported by the record. Dr. Lehn acknowledged he is not an accountant and does not know how accountants define the term "materiality." The critical issue is whether he employed the definition set forth in *Basic Inc. v. Levinson*, *supra*. In that regard, PwC has cited several instances in which he quoted the correct definition. His repeated reference to the correct standard shows he knows what it is.

The plaintiffs claim Dr. Lehn has unjustifiably minimized the significance of PwC's alleged accounting errors. Mr. Devor describes the alleged errors in detail in his report. In his opinion, the

---

[1] It is more accurate to describe materiality as a mixed question of law and fact. *See, e.g., Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 657 (4th Cir.2004).

ORDER - 3

errors enabled Met and Summit to substantially overstate their FY 2000 income. He maintains the overstatements were material to persons who purchased the securities at issue in this case. Dr. Lehn disagrees. He submits reasonable investors make investment decisions based upon their assessment of risk, and they assess risk differently than Mr. Devor suggests. While Dr. Lehn acknowledges investors weigh certain accounting-based measures when evaluating risk, he submits investors adjust them to make them more accurate forecasting tools. Moreover, Dr. Lehn submits reasonable investors pay close attention to a company's cash flow when evaluating risk. Dr. Lehn has spoken with PwC's accounting expert regarding the impact of PwC's alleged errors upon Met's and Summit's cash flows. Dr. Lehn says its his understanding the alleged errors had no impact in that regard. That being the case, says Dr. Lehn, its unlikely PwC's alleged errors were material to a reasonable investor. The plaintiffs reject his conclusions. They maintain Dr. Lehn's opinions suffer from a number of flaws: (1) they are inconsistent with the assumptions PwC made with respect to materiality when it planned its audit of Met's and Summit's FY 2000 financial statements; (2) they improperly discount the role of net income in assessing risk; (3) they incorrectly assume PwC's alleged accounting errors had no impact upon cash flow; (4) they ignore the fact the plaintiffs are not professional investors; and (5) they are not supported by an event study.

In order to put the plaintiffs' contentions in perspective, it is useful to return to the disagreement between Mr. Devor and Dr. Lehn. Mr. Devor is an accountant. He emphasizes an accounting-based measure

ORDER - 4

-- *i.e.*, net income -- when analyzing materiality.  He thinks a reasonable investor would place great weight upon a company's net income.  In his opinion, an accounting error that overstates a company's net income is material to a reasonable investor.  Dr. Lehn rejects Mr. Devor's emphasis on net income.  Dr. Lehn thinks a reasonable investor makes investment decisions based upon the risk associated with the investment.  He thinks a company's cash flow is a better predictor of default than its net income.  Although he does not completely discount the significance of net income, he thinks credit rating agencies and professional investors adjust accounting-based measurements, like net income, before using them to assess credit risk.  For example, they attempt "to eliminate the effects of nonrecurring items and noncore activities from a company's as-reported financial statements in order to better understand trends in core business lines."  (Expert Report of Professor Kenneth Lehn at 36.)  To Dr. Lehn's way of thinking, the accounting errors PwC allegedly committed are not material because they did not affect Met's and Summit's cash flow and, in at least some instances, involved nonrecurring transactions.

     The plaintiffs challenge Dr. Lehn's assertion that one of the most important ways to analyze a company's risk of default on its debts is to measure its cash flow.  They claim it is not supported by case law or academic literature.  They are incorrect. Dr. Lehn quotes Aswath Damodaran, *Corporate Finance:  Theory and Practice* (Wiley 1997), for the proposition cash-flow analysis is a critical part of assessing risk.  He supports the proposition with quotations from

ORDER - 5

materials published by credit rating agencies.  The plaintiffs have not demonstrated either that the authorities quoted by Dr. Lehn are untrustworthy or that he has misquoted them.  Consequently, Dr. Lehn has an economic basis for testing the materiality of PwC's alleged accounting errors by analyzing their impact upon Met's and Summit's cash flow.  Even if that is true, say the plaintiffs, Dr. Lehn's conclusions are the product of an unwarranted assumption.  According to them, PwC's alleged accounting errors did, in fact, affect Met's and Summit's cash flow.  The problem with the plaintiffs' argument is this:  Given the materials submitted by the parties, it is difficult to determine whether the plaintiffs' are correct.  Perhaps they are; but one cannot be certain given the record as it now stands.

The plaintiffs also challenge Dr. Lehn's assertion that it is appropriate to adjust accounting-based measures when assessing risk. The plaintiffs observe that the test for materiality focuses upon the decision-making process of reasonable investors, not professional investors, and they are not professional investors.  Dr. Lehn addresses this argument, albeit obliquely, in his report.  He quotes from a study that states, in part, "'[O]ur evidence suggests that **the market** perceives value in adjusting financial statements as taught in financial statement analysis textbooks and as recommended by professionals, in the valuation of corporate debt." (Lehn report at 38) (emphasis added).  Obviously, not every investor behaves in the manner indicated by the study; but, according to the study's authors, the market as a whole does.  Thus, Dr. Lehn has academic support for his approach to risk analysis.  At trial, the plaintiffs may be able

ORDER - 6

to discredit the study or Dr. Lehn's reliance upon it.  However, the contingency does not render Dr. Lehn's method unreliable from an economic point of view.

The plaintiffs also challenge Dr. Lehn's failure to conduct an event study.  An event study is a tool economists use in order to isolate the cause of investor behavior.  While an event study is a valuable tool, the plaintiffs have not explained clearly why Dr. Lehn's failure to conduct one undermines his conclusions regarding materiality.  For example, he says he could not have conducted an event study because PwC's alleged accounting errors were not revealed to the market.  Perhaps he's mistaken; but if he is, the plaintiffs have not explained why.  Thus, at this juncture, the Court cannot say Dr. Lehn's opinions are inadmissible under Rule 702 because he failed to conduct an event study.

**IT IS HEREBY ORDERED:**

The plaintiffs' motion to exclude the anticipated testimony of Kenneth Lehn (**Ct. Rec. 780**) is **denied.**

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this ___18th___ day of February, 2010.

s/Fred Van Sickle<br>
Fred Van Sickle<br>
Senior United States District Judge

ORDER - 7