UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re METROPOLITAN SECURITIES LITIGATION | No. CV-04-25-FVS<br><br>ORDER RE THE EXPECTED TESTIMONY OF CHRISTOPHER JAMES |

**THIS MATTER** comes before the Court without oral argument based upon the plaintiffs' motion to exclude the expected testimony of Christopher James.

**BACKGROUND**

The plaintiffs seek damages from PricewaterhouseCoopers LLP ("PwC") under Section 11 of the Securities Act of 1933. 15 U.S.C. § 77k(a). They allege PwC committed accounting errors that allowed Metropolitan Mortgage & Securities Co., Inc., ("Met") and Summit Securities, Inc. ("Summit") to falsely portray themselves as healthy companies in registration statements they filed with the Securities and Exchange Commission ("SEC"). PwC has retained the services of economist Christopher James, Ph.D. He has performed at least two functions for PwC. For one thing, he has combed public records looking for references to PwC's alleged accounting errors. For another thing, he has attempted to identify events that occurred during the Summer and Fall of 2003 that caused the decline in share

ORDER - 1

price of Met's publicly-traded securities.  According to Dr. James, the decline was caused by the following five events:  the investigation of Metropolitan Investment Securities, Inc. ("MIS") by the National Association of Securities Dealers ("the NASD"); Roth Capital Partners' June 2003 decision to withdraw as Met's qualified independent underwriter; the October 2003 agreement between the NASD and MIS prohibiting MIS from selling securities; Met's November 2003 decision to suspend the payment of dividends on preferred stock; and Met's December 2003 announcement that MIS was closing.

The plaintiffs argue Dr. James employed an unreliable method while investigating the cause of the decline in the share price of Met's publicly-traded securities.  As they see it, all he did was to identify five events that happened to occur during the same period of time as the share price decline; which, in their opinion, is not enough to establish a causal relationship.  After all, the fact event "A" occurs before event "B" does not mean A caused B.  In order to establish a causal relationship, one must engage in rigorous empirical analysis.  The plaintiffs argue Dr. James did not do that; for which reason, say the plaintiffs, the Court should prohibit him from testifying that the five events listed above caused the decline in share price that occurred during the Summer and Fall of 2003.

**RULING**

PwC has asserted the affirmative defense of "negative causation." *Akerman v. Oryx Communications, Inc.*, 810 F.2d 336, 340 (2d Cir.1987). Negative causation is the mirror image of "loss causation," which is

ORDER - 2

the burden born by a person bringing a securities fraud claim under § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2005 WL 375314, at *6 (S.D.N.Y. Feb. 17, 2005) ("the negative causation defense in Section 11 and the loss causation element in Section 10(b) are mirror images"). In order to establish loss causation, a § 10(b) plaintiff must prove the defendant's material misstatement or misleading omission was revealed to the public and the public reacted adversely to the revelation. *In re Williams Securities Litigation-WCG Subclass*, 558 F.3d 1130, 1140 (10th Cir.2009). The public's adverse reaction may be reflected by a decline in share price. Frequently, the decline occurs after a number of items of negative information about the company have been disclosed to the public. The § 10(b) plaintiff must prove the defendant's misstatement or omission, as opposed to some other negative information, caused the decline in share price. "When multiple negative items are announced contemporaneously, mere proximity between the announcement and the stock loss is insufficient to establish loss causation." *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 271 (5th Cir.2007) (hereinafter "*Oscar*"). The § 10(b) plaintiff "must prove that it is more probable than not that it was this negative statement, and not other unrelated negative statements, that caused a significant amount of the decline." *Id.* at 270 (internal punctuation and citation omitted). In order to satisfy this requirement, the § 10(b) plaintiff must offer "some empirically-based showing that the corrective

ORDER - 3

disclosure was more than just present at the scene." *Id.* at 271 (citation omitted). Typically, the § 10(b) plaintiff submits an "event study." *See id.* An event study is "an empirical technique for determining how securities returns react to new information." Jonathan R. Macey et al., *Lessons from Financial Economics: Materiality, Reliance, and Extending the Reach of Basic v. Levinson*, 77 Va. L.Rev. 1017, 1028 (1991). "[E]vent study methodology has been used by financial economists as a tool to measure the effect on market prices from all types of new information relevant to a company's equity valuation." Jay W. Eisenhoffer et al., *Securities Fraud, Stock Price Valuation, and Loss Causation: Toward A Corporate Finance-Based Theory of Loss Causation*, 59 Bus. Law. 1419, 1419, 1426 (August 2004). Dr. James did not perform an event study. Instead, according to the plaintiffs, he simply correlated negative information concerning Met with declines in the price per share of Met's publicly traded securities. The plaintiffs argue the method Dr. James employed is inadequate to support his theory of loss causation.

Given the analysis Dr. James has performed, he can say two things with confidence. First, the events he has identified are the type of events that could have affected a reasonable investor's decision to sell or buy Met's publicly-traded stock. Second, the events occurred during the same period Met's publicly-traded securities declined in value. But the investing public heard other things about Met during the Summer and Fall of 2003 that could have affected a reasonable investor's conduct. Which items of negative information caused the

ORDER - 4

plaintiffs' losses?  The ones Dr. James identified or some other ones. Dr. James has failed to demonstrate that the items he has identified, rather than other items, caused the plaintiffs' losses.  Consequently, Dr. James lacks an adequate empirical basis for his theory of loss causation.  His theory is insufficiently reliable to satisfy the requirements of Federal Rule of Evidence 702.

**IT IS HEREBY ORDERED:**

The plaintiffs' motion to exclude Dr. James' testimony (**Ct. Rec. 762**) is **granted in part**.  He may not testify the five events listed above, *see supra* p. 2, lines 2-9, caused the decline in share price of Met's publicly-traded securities that occurred during the second half of 2003.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this ___18th___ day of February, 2010.

                                    ___s/Fred Van Sickle___
                                        Fred Van Sickle
                     Senior United States District Judge

ORDER - 5