UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re METROPOLITAN SECURITIES LITIGATION | No. CV-04-25-FVS<br><br>ORDER RE THE EXPECTED TESTIMONY OF JENNIFER E. BETHEL |

**THIS MATTER** comes before the Court without oral argument based upon the plaintiffs' motion to exclude the expected testimony of economist Jennifer E. Bethel, Ph.D.

**BACKGROUND**

During 2000, 2001, and the first half of 2002, Metropolitan Mortgage & Securities Co., Inc., ("Met"), and Summit Securities, Inc. ("Summit") filed nine registration statements with the Securities and Exchange Commission ("SEC") for the purpose of offering securities to the public. In a number of instances, the SEC sent a "comment letter" asking for additional information. The company to whom the SEC issued the letter filed a response. Sometimes the company's response appeared to satisfy the SEC's concerns; other times the SEC sent an additional comment letter (or letters) posing follow-up questions. One can view the comment-letter process in action by examining the SEC's response to a registration statement Met filed on February 21, 2001.

ORDER - 1

On March 23, 2001, the SEC sent a comment letter that posed a number of questions. Among other things, the SEC wanted more information about two accounting determinations in Met's FY 2000 financial statement. One determination concerned a tax shelter named the Foreign Leverage Investment Program ("FLIP"). Another determination concerned a stream of income Met sold to Summit. The parties refer to this as "the Koa transaction." Met responded to the SEC's comment letter on April 6th. On April 18th, the SEC sent another comment letter. The SEC did not ask any more questions concerning the FLIP tax shelter. However, the SEC did ask Met to provide additional information regarding the Koa transaction. Met submitted a response on May 3rd. The SEC did not send any more comment letters to Met concerning the registration statement it had filed on February 21st or the supplemental materials it had filed in support thereof. Less than two weeks later, the SEC declared the registration statement effective.

The SEC's response to the above-described registration statement was consistent with its response to the other registration statements Met and Summit filed during 2001 and 2002. Sometimes the SEC sent comment letters -- sometimes not; but whether or not the SEC sent comment letters, it declared effective the registration statements Met and Summit filed between the beginning of 2000 and the middle of 2002. This action on the part of the SEC enabled Met and Summit to continue selling securities, which was of critical importance to both companies. They depended upon the proceeds from their securities

ORDER - 2

offerings to fund their operations.

During the second half of 2002 and the first half of 2003, Met and Summit filed new registration statements with the SEC. They hoped the SEC would promptly authorize them to offer new securities to the public. Their hopes were dashed. Instead of promptly declaring the new registration statements effective, the SEC sent a series of comment letters. The plaintiffs allege the SEC's comment letters show it questioned the validity of accounting determinations PricewaterhouseCoopers ("PwC") made while auditing Met's and Summit's Fiscal Year ("FY") 2000 financial statements. PwC disagrees with the plaintiffs' interpretation of the 2002-2003 comment letters. PwC intends to call economist Jennifer E. Bethel, Ph.D., to support its rival interpretation. Among other things, she will opine:

(1) "the SEC would not have deemed effective a Metropolitan registration statement in 2001 if it disagreed with Metropolitan's FY 2000 accounting for FLIP and Koa";

(2) "the SEC's approval of registration statements in 2001 and 2002 that incorporated the FY 2000 and FY 2001 financial statements -- which approval was never revoked -- supports [Professor Bethel's] opinion that the SEC was not concerned about Metropolitan's and Summit's FY 2000 and FY 2001 accounting in late 2002 and 2003";

(3) the SEC's delay in approving the new registration statements did not cause Met's and Summit's 2003 liquidity crisis;

(4) the liquidity crisis was caused by Roth Capital Partners' withdrawal as Qualified Independent Underwriter ("QIU") and the

ORDER - 3

decision on the part of Metropolitan Investment Securities, Inc. ("MIS") to accept the sanctions imposed by the National Association of Securities Dealers ("NASD"), including an order prohibiting MIS from selling securities; and

(5) it is neither inappropriate nor uncommon for a company to use new debt to pay off old debt.

The plaintiffs urge the Court to exclude Dr. Bethel's opinions pursuant to Federal Rules of Evidence 702 and 403. First, they argue she is unqualified to say what the SEC meant by issuing a comment letter. Second, they argue her interpretations of the disputed comment letters are not based upon a commonly accepted methodology or standard. Third, they argue her interpretations are inconsistent with 15 U.S.C. § 78z. Fourth, they argue the probative value of her testimony, if any, would be substantially outweighed by the danger of unfair prejudice.

**RULING**

No one from the SEC is going to appear at trial and explain why the agency delayed declaring effective Met's and Summit's last set of registration statements. The plaintiffs will ask the jury to infer the SEC's motivation from the questions it posed in the 2002 and 2003 comment letters. Whether such inferences are valid is debatable. As the plaintiffs themselves point out, Congress has limited the inferences one may draw from the SEC's actions or lack thereof:

> No action or failure to act by the [SEC] . . . shall be construed to mean that the [SEC] has in any way passed upon the merits of, or given approval to, any security or any

ORDER - 4

> transaction or transactions therein, nor shall such action or failure to act with regard to any statement or report filed with or examined by [the SEC] . . . be deemed a finding by [the SEC] that such statement or report is true and accurate on its face or that it is not false or misleading.

15 U.S.C. § 78z. Assuming, for purposes of argument, one may infer from the SEC's 2002 and 2003 comment letters why the agency delayed declaring effective the last set of registration statements, the Court must decide which rules govern the interpretation of agency correspondence. The record is not well-enough developed at this time to permit the Court to make a comprehensive ruling. What the Court can say is this: Ordinarily, a writing speaks for itself. *See, e.g.*, Michael H. Graham, *Handbook of Federal Evidence* § 1002:3 (6th ed.2006). If it is permissible for anyone to determine from the questions the SEC posed in comment letters why it did, or did not, declare a registration statement effective, then it will be for the jury, not for experts, to make that determination.

**IT IS HEREBY ORDERED:**

The plaintiffs' motion to exclude the testimony of economist Jennifer E. Bethel, Ph.D. (**Ct. Rec. 755**) is **granted in part**. She may not attempt to interpret the SEC's comment letters.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this ___18th___ day of February, 2010.

                                          s/Fred Van Sickle
                                            Fred Van Sickle
                               Senior United States District Judge

ORDER - 5